An Ordinance adopted by the Police Jury of Ouachita Parish, Louisiana, being No. 2047, makes unlawful the roaming or running at large of livestock on any property in certain designated wards of that political subdivision other than on the property of the stock's owner.
Also, it contains provisions, among others, reading as follows:
"Section 2. Be it further ordained etc., That authority to seize and impound any stock so running or roaming at large is hereby granted to any peace officer of the Parish of Ouachita, and to any citizen or resident of said Parish.
"Section 3. Be it further ordained etc., That any officer or individual so impounding such stock found running or roaming at large shall have the right, after having so taken up and impounding such stock, to charge and collect from the owner of the impounded stock, as follows:
"For horses, mules, and cattle, fifty (50 cts) cents per head, and in addition thereto, twenty-five (25 cts) cents per head per day for each day such stock has been fed by the individual impounding such stock.
"For hogs, sheep and goats, twenty-five (25 cts) cents per head per day for each day such stock has been fed by the individual impounding such stock.
"Section 4. Be it further ordained etc., That in the event such impounded stock are not claimed by the owner, and the charges above specified paid, within one week from date of the impounding, the person who impounded the stock may cause such stock to be advertised and sold as stray stock, according to law and shall receive from the sale price of such stock, the penalty and charges hereinabove provided.
"Section 5. Be it further ordained etc., That any person or officer impounding any stock, as hereinabove provided shall give notice to the owner of said stock so impounded, if the owner be known, and if not known, shall post on the highway at a point nearest to the place of impounding, notice of the impounding with a description of the stock so impounded."
On July 25, 1941, Mrs. W.H. Butler seized and impounded twelve head of cattle belonging to J.W. Perry that had strayed from a nearby place in Ouachita Parish, and on the following day she notified the owner of her act.
After the lapse of about nine days, during which period Perry made no effort to claim the stock, Mrs. Butler caused the insertion of an advertisement in the Monroe News Star, a publication of Ouachita Parish, reciting:
"Picked Up At My Place, near Perryville, La., July 25, 12 head of cattle branded P. If not called for within ten days, cattle will be sold.
"Mrs. W.H. Butler."
This advertisement was carried by that newspaper on the dates of August 4, 8 and 12 of the year 1941.
About 11 o'clock of the morning of August 15, 1941, Perry called at the home of Mrs. Butler for the purpose of redeeming his cattle. He was informed by her then that she had held a sale two hours previously, pursuant to the mentioned Ordinance, at which she sold the stock to herself to satisfy the charges that had accrued.
Mrs. Butler, according to her testimony, occupied no public office of any kind; and she was the only person present at the asserted sale that occurred on her premises.
Perry on August 29, 1941, obtained a writ of sequestration from the district court of his parish, and thereunder the cattle were seized by the sheriff.
In this suit, filed several days later against Mrs. Butler and her husband, Perry *Page 97 
prays that he be decreed the owner of the sequestered stock, free from any liens, encumbrances or charges whatsoever.
Plaintiff, in the petition, pleads that:
1. There was no sale by which Mrs. Butler acquired title to the cattle.
2. Alternatively, if a sale was attempted under the above mentioned Ordinance, there was no compliance with the terms and conditions thereof.
3. Further in the alternative, the Police Jury of Ouachita Parish, in enacting such Ordinance exceeded the powers delegated to it.
4. Further in the alternative, the Ordinance is unconstitutional.
Deposited in the registry of the court by plaintiff when the suit commenced, without admitting it to be due and owing, was the sum of $116, this amount representing the charges allowed by the Ordinance during Mrs. Butler's impounding of the animals.
Defendants filed exceptions of no cause and no right of action and a motion to dissolve the writ of sequestration. These were overruled.
The answer of defendants avers full compliance with the provisions of said Ordinance and the effecting of a good and valid sale of the stock to them. Further, they show "that they make no claim whatsoever to the money held in the registry of the court as said cattle were legally sold and that they have legal title to same, plaintiff having lost all of his rights to redeem said cattle by failure to exercise said rights at or before the said sale."
A motion by plaintiff for judgment on the pleadings was referred to the merits of the case.
The district court, following a trial, concluded that there was no legal sale held pursuant to the Ordinance's provisions; and it rendered judgment in favor of plaintiff maintaining the writ of sequestration and recognizing his ownership of the cattle. Further it ordered the deposited $116 returned to plaintiff, defendants having disclaimed all interest therein.
Defendants are appealing devolutively.
It is a well settled doctrine that in all penal or summary proceedings for the divesture of title to property the law must not only be construed strictly but its substantial requirements must be closely observed as well. 2 American Jurisprudence, verbo Animals, Section 148; 3 C.J.S., verbo Animals, § 137; Miller v. Doyal, 9 La.App. 313, 119 So. 477.
If it be assumed arguendo that the Ordinance in question meets all constitutional essentials, and that it is a valid exercise of the Police Jury's power, we are convinced, as was the trial judge, that all of the requirements thereof were not closely observed and followed by Mrs. Butler. Hence, there was never consummated a legal sale of plaintiff's cattle.
As before shown the Ordinance states that "the person who impounded the stock may cause such stock to be advertised and sold as stray stock, according to law * * *." Obviously, this provision means that the authorized advertising shall designate the time and place for the occurrence of a public sale of the property, and that the adjudication must be conducted then and there by a duly empowered public official. It does not contemplate the holding of a sale at a time and place known only to the impounding person, such as Mrs. Butler asserts was held; because, if it did, an advertising of the livestock would be a useless and unnecessary procedure. The very purpose of the required advertisement is to give notice of the proposed public sale and to influence the attendance there of numerous prospective purchasers who might indulge in competitive bidding on the property offered.
A public sale or a sale by auction is described in our substantive law as that which takes place when the thing is offered publicly to be sold to whoever will give the highest price. Civil Code, Article 2601. Also the law provides that such a sale must be made through the ministry of a public officer, appointed for that purpose, and cannot be made directly by the seller himself. Civil Code, Article 2605.
As there was improper advertisement of the property and no adjudication at a regularly held public sale by an officer with authority so to act, plaintiff's title to the cattle was never divested.
The judgment is affirmed.
DREW and TALIAFERRO,JJ., occur. *Page 98