520 So.2d 336 (1988)
STATE of Louisiana
v.
Norman J. SPOONER.
No. 87-KK-0892.
Supreme Court of Louisiana.
January 18, 1988.
Opinion Assigning Additional Reasons February 4, 1988.
Rehearing Denied February 11, 1988.
*338 John M. Crochet, Public Defender's Office, Lake Charles, for relator.
William J. Guste, Jr., Atty. Gen., Richard Ieyoub, Dist. Atty., Saundra M. Isaac, and Elizabeth S. McCall, Asst. Dist. Attorneys, for respondent.
CALOGERO, Justice.
After Norman Spooner pled guilty to possession of controlled dangerous substances that were found during a search of his vehicle by state police, the state sought a court order forfeiting Spooner's ownership of the vehicle and cash money found on his person at the time of his arrest. Applying the provisions of La.Rev.Stat. Ann. § 32:1550 (West Supp.1987), the trial court ordered forfeiture of the vehicle and the money. In so ruling, the trial court expressly relied on La.R.S. 32:1550(A)(7)(c), which provides that money seized in close proximity to illegal controlled substances shall be presumed to be forfeitable contraband unless the owner thereof proves otherwise by clear and convincing evidence. After the court of appeal affirmed the trial court's forfeiture order,[1] we granted Spooner's application to consider the ruling of the courts below.[2]
Today we hold that the statutory presumption embodied in La.R.S. 32:1550(A)(7)(c) is invalid because it infringes upon due process rights and property interests protected by the Louisiana constitution. We also find that the provision which requires the claimant to prove by clear and convincing evidence that the money is not contraband violates due process protections afforded by the United States Constitution. Therefore, we reverse the judgments of the trial court and the court of appeal insofar as they allowed the forfeiture of currency which was found on defendant's person at the time he was arrested for possession of controlled dangerous substances, and remand the case for a new trial so that the state may have the opportunity to prove, without the benefit of the presumption, that the currency is contraband. However, we affirm the judgments of the courts below to the extent that they allowed the forfeiture of the vehicle operated by defendant at the time of his arrest, because we find that the state sufficiently proved that the vehicle is forfeitable contraband within the meaning of La.R.S. 32:1550(A)(5) and R.S. 1550(C)(3).
The central issue presented by this case is whether the property owner may be required to prove at a forfeiture proceeding that money found on his person at the time of his arrest is not contraband. After reviewing pertinent provisions of the state constitution and our holding in State v. Manuel, 426 So.2d 140 (La.1983), we conclude that the property owner cannot be required to disprove a presumption that his property is contraband. Instead, the state must bear the burden of proving that the seized property is contraband.
In so holding we do not reach the additional issue raised by the parties as to whether the state must prove the grounds supporting forfeiture beyond a reasonable *339 doubt.[3] There is divided sentiment among the members of this Court as to whether the state should be required to prove the grounds for forfeiture beyond a reasonable doubt, or whether it should be allowed to utilize a less exacting standard, such as proof by clear and convincing evidence or by simply a preponderance of the evidence. For reasons more fully delineated below, we conclude that this case does not present the appropriate vehicle for the resolution of that issue.
Because we affirm the trial court's ruling that the state proved the grounds for forfeiture of the automobile beyond a reasonable doubt, we need not consider here whether proof under a lesser standard would have been sufficient. Similarly, because the state failed to provide any evidence that the seized currency was contraband, we are not called upon to decide whether, hypothetically, the state could have satisfied its evidentiary burden on this issue by proof short of the reasonable doubt standard. Instead, we focus herein on the threshold question of which party must bear the burden of proof in a forfeiture proceeding, and in the process we take the opportunity to expound upon the important constitutional considerations which apply to this area of law.

(I) FACTS
While on routine patrol on I-10 near Lake Charles, State Trooper Scott Havens observed a 1980 Toyota Celica with an expired California license plate. After learning by radio that the vehicle was registered to one Frank Spooner, the trooper signaled its driver to pull over to the side of the roadway and stop. The driver complied, and stepped out of his vehicle. Trooper Havens approached and inquired as to his identity.
The driver did not profess to be the owner of the vehicle. He identified himself as Ernest Narcisse, produced a California driver's license in that name, and told the officer that the car was owned by Frank Spooner. "Narcisse" claimed that he was driving the car to California as a favor to Spooner, who resided in that state. Trooper Havens became suspicious when the driver could furnish neither the car's registration papers nor an address or phone number at which Spooner could be reached in California. He requested permission to search the vehicle, and after obtaining the driver's written consent, he radioed for assistance. Another state trooper arrived on the scene and the search of the vehicle began.
During the course of the search, the officers discovered two sets of scales, on which there was a residue of cocaine, and assorted pills, some of which were controlled dangerous substances. The driver was advised of his Miranda rights and placed under arrest. Confronted with a second driver's license discovered in the interior of the car, the driver admitted that his name was indeed Frank Spooner and that he was the owner of the automobile. Approximately $1,400 in cash was discovered in Spooner's back pocket during the pat-down that followed his arrest.
Spooner subsequently pled guilty to four counts of possession of controlled dangerous substances. Thereafter, the state filed a petition under R.S. 32:1550 seeking forfeiture of the cash and automobile.[4]

*340 (II) FORFEITURE: THE STATUTORY FRAMEWORK
Before discussing and analyzing the actions of the courts below, it is helpful to review at the outset the provisions of the controlled dangerous substances forfeiture statute which are at issue in this case. La.R.S. 32:1550(A) provides that certain property "shall be subject to seizure and forfeiture" if that property is used to facilitate the transportation, sale, possession or manufacture of controlled dangerous substances. The statute classifies property that is used for such an illicit purpose as "contraband."
It is important for the purpose of statutory construction to distinguish between the two generic categories of property which may be classified as "contraband." Items, the possession of which is intrinsically illegal, such as illegal narcotics, are categorized as contraband per se. Things which are subject to forfeiture because they are the immediate instrument of a crime, but the possession of which is not intrinsically illegal, such as automobiles, guns and currency, are considered derivative contraband. See State v. Manuel, 426 So.2d 140, 144 (La.1983). While this generic distinction is not made when the word "contraband" is used in R.S. 32:1550, for purposes of clarity we refer to these terms hereafter whenever necessary to distinguish between these items (contraband per se and property which may be considered derivative contraband).
In order to obtain the forfeiture of any type of derivative contraband, the statute requires a showing that "the value of the contraband was in excess of five hundred dollars or that the contraband was intended for commercial sale." La.R.S. 32:1550(C)(3). The state must also prove *341 that the seizure was constitutional, or was based upon reasonable grounds for the investigating officer to believe that the seizure was constitutional. R.S. 32:1550(C)(1).
With respect to the forefiture of an automobile or any other type of conveyance, the state must also show that the owner was "knowingly and intentionally" a consenting party or privy to a violation of the state's drug laws. § 1550(C)(2). Further, it must be demonstrated pursuant to § 1550(A)(5) that the vehicle was used or intended to be used to transport or in any manner facilitate the transporting, sale, receipt, possession, manufacture, compounding, dispensation or concealment of illegally acquired controlled dangerous substances.
Money which is seized incident to the enforcement of the state's drug laws may also be subject to forfeiture. § 1550(A)(3) classifies as contraband all cash used to facilitate the transportation, sale, manufacture and possession of controlled dangerous substances. § 1550(A)(7)(a) further provides that anything of value furnished or acquired in exchange for a controlled dangerous substance, including all proceeds traceable to such an exchange, is considered forfeitable contraband. Finally, § 32:1550(A)(7)(c) provides that currency seized in close proximity to illegal drugs or paraphernalia is presumptively contraband:
There shall be a rebuttable presumption that all moneys, coin, and currency seized incident to a valid arrest and found in close proximity to contraband controlled dangerous substances or contraband manufacturing or distributing paraphernalia or records of the illegal importation, manufacture, or distribution of controlled dangerous substances, are contraband as defined herein. The burden of proof shall be upon claimants of such property to rebut this presumption by clear and convincing evidence.
Having reviewed the provisions of La.R. S. 32:1550 which are pertinent to this case, we now turn to the facts as they were further developed in proceedings before the district court.

(III) THE FORFEITURE HEARING
At the forfeiture hearing, the state attempted to prove, among other things, that the illegal contraband seized from Spooner's vehicle either exceeded $500 in value or was intended for commercial sale.[5] The following evidence was presented regarding the nature and amount of the illegal items found in Spooner's vehicle.
The state's first witness, Trooper Havens, recounted the events leading up to the search, as set forth in the first section of this opinion. He further testified that he searched the trunk of the vehicle, while Trooper Shields, the other officer who had arrived on the scene, searched the interior of the car. According to Havens, the trunk was filled with clothes and assorted items. He spotted a small black bag, similar to a shaving kit. Unzipping it, Havens observed a jar with a screw-on top and a plastic bottle, resembling those in which Tylenol is sold. Inside the jar Havens found "one or two clear plastic baggies of white crystalline powder," numerous very small ziplock bags and two razor blades. Regarding the powder in the jar, Spooner told Havens, "That ain't coke, man, that's cut." Recognizing "cut" as a term describing a substance used to dilute cocaine for resale, Havens advised Spooner of his Miranda rights and continued the search.
Inside the Tylenol bottle, Havens found "numerous assorted pills and capsules," some of which he recognized as Tylenol-3, a prescription drug. Shields identified other pills as being controlled substances. When asked if he had prescriptions for those pills, Spooner answered in the negative, explaining that the pills had come *342 "from street deals." Further search of the trunk turned up ledger books, two sets of scales, and additional items recognizable as drug paraphernalia (a screen, crusher and grinder). Trooper Havens completed his testimony by identifying the state's exhibits as those seized from Spooner's car at the time of the stop and arrest.
The state's next witness was State Trooper Jerome Segur, who was qualified as an expert in narcotics investigation. As supervisor of general narcotics investigations in the six-parish Southwest District, Sgt. Segur described how the screen, crusher and grinder found with the scales could be used to reduce high-grade rock cocaine into powder. Once granulated, Segur explained, cocaine is diluted with "cut," such as the Manitol powder found in Spooner's trunk, to reduce the purity of the drug for street transactions. Once granulated and diluted, the cocaine is weighed and placed in plastic baggies, ready for sale. It was Segur's opinion that ordinary buyers would have no need for scales and the paraphernalia, nor, in his view, would it be "typical" for a mere consumer to have the number of small plastic bags found in Spooner's car.
Segur also testified as to the laboratory test results run on the substances found in Spooner's car. Cocaine residue was found on the scales. The Tylenol bottle contained a variety of barbiturates, including valium, marijuana and codeine. In Segur's view, it was entirely consistent for a dealer to have a variety of these "downers" on hand for customers to ingest prior to taking cocaine, which is an "upper."
With respect to the ledgers, Segur found them to contain a list of detailed expenditures, as well as names and telephone numbers next to drugs such as preludin and methadone, a heroin substitute. This also suggested to Segur that the officers had found a drug distributor rather than a mere consumer.
Segur conceded that if each item were viewed in isolation, the paraphernalia and drugs could be explained away, or at least explained as contraband intended for personal consumption. However, when the "totality of the circumstances" was considered, it was Segur's opinion that Spooner was a cocaine dealer. Segur ended his direct testimony by saying there would be "[n]o problem" in selling the controlled substances, scales and paraphernalia for $500.
Under cross-examination, Sgt. Segur admitted the items could sell for less than $500, "[d]epending on the market" and repeated that the cocaine residue was not a "saleable quantity." The witness pointed out, however, that the scales alone could, under some circumstances, sell for "two or three hundred dollars." Defense counsel elicited from Segur a street value for the 4½ pills of valium ($20 each), for the 5½ Tylenol-3 pills ($15 each), for the 6½ marijuana cigarettes found ($5-$7 each) and manitol "cut" ($60).
At the conclusion of Sgt. Segur's testimony, the state rested. The defense called no witnesses, but a joint stipulation was entered to the effect that Norman Spooner, Sr., defendant's father, would have testified that he gave his son $1,500 two days prior to the date that defendant left New Orleans to go to California. According to the stipulation, which was accepted by the court, the money was collected from defendant's relatives in order "for him [defendant] to go to California."

(IV) DISPOSITION BY THE DISTRICT COURT
At the conclusion of the hearing, the trial judge ordered forfeiture of the automobile and the money, and assigned oral reasons in support of his decision. With respect to the general requirements for forfeiture, the judge ruled that "the state has carried its burden of proving that the seizure was constitutional," and "carried its burden of proving beyond a reasonable doubt that the contraband was intended for commercial sale." Regarding the automobile, the judge concluded that the state had also proven that "the owner of the vehicle knowingly and intentionally used this vehicle in the transportation of the contraband and for the use and facilitation of the *343 commercial sale of the C.D.S. [controlled dangerous substances]."
With regard to the currency, the trial judge found that the state did not prove beyond a reasonable doubt that the cash was used or intended to be used to facilitate the transportation, sale or possession of contraband. However, he held that the state was nonetheless entitled to obtain forfeiture of the money because the defendant failed to rebut the presumption found in R.S. 32:1550(A)(7)(c) by clear and convincing evidence.

(V) DISPOSITION BY THE COURT OF APPEAL
Following the entry of the forfeiture order by the trial court, the defendant timely filed an application for supervisory writs to the Third Circuit Court of Appeal. Rejecting the defendant's argument that the presumption contained in § 1550(A)(7)(c) is invalid, the appellate court concluded that a forfeiture action is a civil remedial proceeding and that therefore the statutory presumption is "permissive and constitutional." Conceding that this Court characterized forfeiture proceedings as "quasi-criminal" in State v. Manuel, 426 So.2d 140 (La.1983), and that "in Manuel ... there is language to the effect that in forfeiture proceedings the State must prove each element of its case beyond a reasonable doubt," the court of appeal nonetheless posited that "a close reading" of Manuel "indicates that such statements were dictum as the proceeding under review was a pre-trial proceeding...." 505 So.2d at 233.
Rather than relying on Manuel, the Third Circuit turned to a number of federal court of appeals and district court decisions which addressed the burden of proof issue under federal forfeiture statutes. Those cases tend to characterize forfeiture proceedings as more civil in nature than criminal, and they sanction shifting the burden of proof to the defendant under certain circumstances.
The court of appeal here also rejected defendant's argument that the state failed to prove that the value of the contraband exceeded $500 or was intended for commercial sale. Noting that the evidence taken at the forfeiture hearing indicated that Spooner was selling drugs for profit, the court of appeal was unable to label as erroneous the trial judge's finding that the contraband was intended for commercial sale.

(VI) THE COMMERCIAL SALE REQUIREMENT
In his assignments of error to this Court, Spooner re-urges the two arguments rejected by the court of appeal: (1) that R.S. 32:1550(A)(7)(c) unconstitutionally shifts the burden of proof to the defendant, and (2) that the state failed to sufficiently prove that the contraband was valued in excess of $500 or was intended for commercial sale. We consider the latter issue first, because proof that the contraband exceeded $500 or was intended for commercial sale is a prerequisite to the forfeiture of any derivative contraband, while the issue of R.S. 32:1550(A)(7)(c)'s constitutionality pertains strictly to whether the forfeiture of the currency should be upheld.
La.R.S. 32:1550(C)(3) expressly provides the state with the option of proving that the value of the contraband exceeded $500 or that the contraband was intended for commercial sale. The state's evidence that the controlled dangerous substances were intended for commercial sale was competent and unrebutted. Sgt. Segur testified that the paraphernalia, ledgers, number of baggies, cocaine residue on the scales and variety of "downers" present all were factors typical of a drug dealer's operation, factors which demonstrate that the controlled dangerous substances found in the vehicle were intended for commercial sale. We find this evidence persuasive, as did the courts below, and thus cannot say that the trial judge erred by concluding that "the state has carried its burden of proving beyond a reasonable doubt that the contraband was intended for commercial sale."
The trial court expressly found that the state met its burden of proof on this issue under the highest proof standard possible ("beyond a reasonable doubt"). Because *344 we agree with that aspect of the trial court's ruling, we need not consider here the state's contention that it may satisfy the proof requirements of R.S. 32:1550(C)(3) under an evidentiary burden less rigorous than the reasonable doubt standard.

(VII) FORFEITURE OF THE AUTOMOBILE
Having established that illegal contraband intended for commercial sale was found in defendant's vehicle, the state easily met the remaining elements of proof necessary to allow forfeiture of the automobile. It is clear that Spooner's vehicle was used to transport controlled dangerous substances in the manner specified by R.S. 32:1550(A)(5). The evidence also leaves no room to doubt that Spooner "knowingly and intentionally" possessed and transported controlled substances, as required by § 1550(C)(2).
We agree with the trial court that the state proved all statutory elements necessary to obtain forfeiture of the vehicle. However, we must now turn to the issue which prompted our writ grant in this case, i.e., the conclusion of the lower courts that the $1,400 must be forfeited because the defendant did not prove by clear and convincing evidence that the money was not derivative contraband.

(VIII) FORFEITURE OF THE CURRENCY
La.R.S. 32:1550(A)(7)(c) creates a "rebuttable presumption" that all currency "seized incident to a valid arrest and found in close proximity to ... controlled dangerous substances or ... manufacturing or distributing paraphernalia" is contraband. In other words, based on the location of the money at the time of the arrest, the presumption arises that it was used to facilitate the trafficking or sale of illegal drugs. The presumption may only be rebutted if the defendant demonstrates by clear and convincing evidence that this is not true. Thus, the statute places the burden on the defendant to show that the money was not used in any manner to facilitate a violation of the state's drug laws. In considering the defendant's argument that § 1550(A)(7)(c) is unconstitutional, we will now examine two prior decisions of this Court which addressed the constitutional requirements that apply to forfeiture proceedings.
(A) State v. Manuel and State v. 1980 Green GMC Van
La.R.S. 32:1550 is modeled on the forfeiture provisions of the Uniform Controlled Substances Act, § 505, 9 U.L.A. 191 (1979), and was enacted by the Legislature in 1981. The statutory presumption contained in § 1550(A)(7)(c) was added by amendment in 1983. Although we have not previously had before us the issue of the presumption's validity, we did give extensive consideration to the purpose, constitutionality and allowable scope of forfeiture proceedings in State v. Manuel, 426 So.2d 140 (La.1983).
In Manuel, the state instituted proceedings under 32:1550 in an attempt to obtain the forfeiture of two vehicles seized as contraband. The defendant moved for a release of his vehicles on the grounds that the forfeiture statute was unconstitutional. The district court denied the motion. After granting defendant's application for a review of that ruling, we held that the statute was constitutional and in the process set down certain guidelines for assessing the constitutionality of forfeiture proceedings.
At the outset, we noted that a forfeiture proceeding is essentially criminal in nature because its primary purpose "is to penalize for the commission of an offense against the law." 426 So.2d at 143. Thus, we held that any statutory scheme allowing forfeiture is constitutional if "it permits the taking of property for forfeiture purposes subject to the same preconditions required for a seizure of criminal evidence." Id. at 146. We further held that property may be constitutionally forfeited if the state proves the grounds for forfeiture at the evidentiary hearing. Id. at 147. With regard to the case then before us, in which there had not yet been a hearing at the time of our *345 decision, we observed that "[a]t trial of the forfeiture proceeding, of course, the state must prove each element of its case beyond a reasonable doubt because forfeiture proceedings are quasi-criminal." Id. at 148.
Manuel also made clear that a forfeiture provision will not pass constitutional scrutiny if it infringes upon the "far reaching protections" which the 1974 Louisiana Constitution extends to the right to own and control private property. We discussed therein the extensive limitations which Article I, Section 4 of the Louisiana Constitution places on the state's right to forfeit, take or regulate private property. Article I, Section 4 provides in pertinent part that:
Every person has the right to acquire, own, control, use, enjoy, protect and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.... Personal effects, other than contraband, shall never be taken.

(Emphasis added)
This constitutional language led us to conclude in Manuel that a forfeiture statute does not infringe upon protected property rights if it requires the state to prove that the alleged contraband was used "as an immediate instrument of a crime." 426 So.2d at 145. We also noted that review on this issue under the federal constitution is less exacting than Louisiana constitutional inspection because of the different, more detailed safeguards for property rights contained in our state charter. Id. at 147.
Our ultimate holding in Manuel was that the statutory provisions which the state relied on in its efforts to forfeit defendant's vehicle were not unconstitutional on their face and would not be unconstitutional in application as long as certain prerequisites were met. Among those prerequisites was the requirement that the state prove that the property sought to be forfeited was derivative contraband, i.e., property used as the immediate instrument of a crime. Our conclusion in Manuel that forfeiture proceedings must be tailored to avoid infringement upon constitutional due process and private property rights was not dicta, as the court of appeal opined; to the contrary, that conclusion was one of the premises upon which our opinion was based.
Nor did Manuel represent a departure from our holdings in prior cases that involved forfeiture. As we noted in State v. 1971 Green GMC Van, 354 So.2d 479, 484 (La.1977), "Louisiana law has traditionally looked with disfavor upon forfeitures." The conclusion that forfeiture is essentially punitive was critical to our ruling in Green Van that the controlled substances forfeiture statute then in existence (the predecessor of R.S. 32:1550) was constitutionally deficient on due process grounds. That statute allowed confiscation of vehicles without any requirement that the vehicle owner "knew of the illegal [drug] possession, had consented to it, or had any connection with it at all." 354 So.2d at 485.
In Green Van, we independently concluded that the forfeiture statute unlawfully infringed upon the protection of private property extended by Article 1, Section 4 of the Louisiana Constitution. Because the statute allowed property to be forfeited without a showing that the owner thereof knew about or in any way consented to the illegal conduct, we found that it was "an unreasonable restriction on the right to property guaranteed by Article I, section 4 of the Louisiana Constitution." Id. at 486.
(B) Constitutionality of La.R.S. 32:1550(A)(7)(c)
In light of our holdings in Manuel and Green Van, the court of appeal was wrong as a matter of law when it concluded that La.R.S. 32:1550 "establishes a civil remedial proceeding...." The appellate court passed too quickly over Manuel in its effort to derive a rule of law from federal jurisprudence.[6] Instead, it should have analyzed *346 the statutory presumption in the context of the due process protections that must be extended to the defendant in a quasi-criminal proceeding. Also, the court of appeal did not consider whether the presumption infringes upon the far reaching protections afforded to private property rights by the Louisiana Constitution. We now consider both of those areas of constitutional protection.

(1) Due Process Considerations
Article 1, Section 2 of the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." A forfeiture proceeding is by nature an attempt to deprive the defendant of his property as a punishment. While we need not attempt to delineate in this opinion the full range of process which is due to the defendant in a forfeiture proceeding, we hold that the property owner is entitled to a presumption of innocence similar to that to which the accused is entitled in any criminal case. The burden of proving that the defendant's property is derivative contraband must be on the state.
Article 1, Section 16 of the state constitution contains an explicit requirement with respect to the presumption of innocence: "Every person charged with a crime is presumed innocent until proven guilty...." This statement incorporates both the presumption of innocence and the requirement that the state has the burden of proving the defendant's guilt, thereby constitutionalizing two principles that have long been basic assumptions of criminal procedure and due process. See Hargrave, Declaration of Rights, 35 La.L.Rev. 1, 52 (1974). See also In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895); State v. Hagan, 49 La.Ann. 1625, 22 So. 832 (1897); La.Code Crim.Proc.Ann. art. 804 (West 1981); La.Rev.Stat.Ann. 15:271 (West 1981). Thus, if the state seeks to take a person's private property without compensation because it allegedly has been used as an instrumentality of a crime, the state must prove the property's alleged relationship with the crime.
La.R.S. 32:1550(A)(7)(c) impermissibly relieves the state of its burden of proving that seized currency has been used as an instrumentality of a crime. In order to be entitled to the presumption that the money was used as an instrumentality of a crime, the state, under this statute, could rest its case on the issue after simply demonstrating that the seized currency was found "in close proximity" to illegal contraband. Such an evidentiary presumption is clearly invalid under the established rule of criminal law that mandatory presumptions may be sustained only if the prosecution can demonstrate that the presumed fact necessarily flows from the proven fact upon which it is made to depend. State v. Searle, 339 So.2d 1194, 1205 (La.1976). The fact that this defendant was found to have $1,400 in cash in his pocket at the time illegal drugs were discovered in the trunk of the car he had been driving (the proven fact) does not in and of itself demonstrate that the money was in any way connected with the drugs (the presumed fact). Proximity of the cash to the illegal substances is one factor which the state may rely on to prove that the money was used as an instrumentality of a crime. But while proximity may in some cases give rise to the inference that currency is derivative contraband, it cannot mandate a presumption that the money is contraband. There are too many other reasonable possibilities which could account for the presence of the cashsuch as this defendant's assertion that he received the money from his father for the purpose of taking a trip.
The statute's requirement that the claimant disprove the presumption by clear and convincing evidence is particularly onerous. While the burden of proof on the question of whether the money is derivative contraband should not be imposed on *347 the claimant under any circumstances, imposition of a "clear and convincing" burden on the claimant would in many cases result in a de facto irrebutable presumption of guilt. Proof of a negative, such as innocence, is always difficult, but the "clear and convincing" burden requires the property owner to prove that the negative is highly probable. Imposing such a burden on the defendant in a quasi-criminal action goes far beyond the limitations of due process.[7]
We also find that placing the burden of proof on the claimant under a "clear and convincing evidence" standard violates due process guarantees provided by the United States Constitution. As discussed in the cases cited by the court of appeal, the federal approach allows the burden of persuasion to shift to the claimant upon an initial government showing of probable cause to institute the proceeding.[8]See e.g., United States v. $55,518.05 in United States Currency, 728 F.2d 192 (3rd Cir. 1984); United States v. $2,500 in United States Currency, 689 F.2d 10 (2d Cir.1982). However, these cases do not suggest that the burden may be imposed on the property owner to rebut the presumption of guilt by clear and convincing evidence. None of the federal forfeiture statutes go so far, and we believe that Louisiana's statute violates federal due process standards when it attempts to place this burden on the claimant.
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court specified three factors which should be considered in any assessment of whether a challenged government deprivation complies with the dictates of federal due process:
(1) the private interest that will be affected by the official action;
(2) the risk of an erroneous deprivation of that interest through the procedures employed by the government; and
(3) The government's interest in employing the challenged procedure, including the function of the procedure and the *348 burdens that a substitute procedure would entail.
424 U.S. at 334-35, 96 S.Ct. at 903.
Applying Mathews to the challenged procedure, we find that there is a significant risk under the current statute that currency will be forfeited even though it is not derivative contraband. That risk outweighs the utility which the presumption provides to the state by easing its burden of proof at the forfeiture hearing.
As the court of appeal noted, the presumption takes into account the fact that in some cases, the state may encounter "difficulty in proving the origin of monies seized in connection with narcotic arrests...." 505 So.2d at 237. There is, however, a critical difference between a statutory mechanism which eases the state's burden of proof and one which effectively eliminates that burden altogether. Even in light of the shifting evidentiary standard of proof that has been upheld by federal circuit courts,[9] we do not believe that a forfeiture statute which requires the claimant to prove by clear and convincing evidence that his money is not derivative contraband survives constitutional scrutiny under Mathews. For reasons discussed elsewhere in the opinion, we do not determine herein the state's burden of proof in the absence of the presumption. We simply hold that the requirement that the defendant rebut the presumption violates due process protections afforded by the state constitution, and that the additional requirement that the defendant rebut the presumption by "clear and convincing evidence" violates federal due process protections.

(2) Private Property Rights
We independently determine that § 1550(A)(7)(c) infringes upon the "far reaching" protections afforded to private property owners by the Louisiana Constitution. As we noted in Manuel and Green Van, any forfeiture procedure must comply with the protections extended by Article I, Section 4 of the 1974 Constitution.
The basic right protected is the right to own and enjoy private property. Forfeiture of contraband per se is not an infringement on that right because an individual can have no ownership interest in items that are intrinsically illegal. Forfeiture of derivative contrabanditems which are not intrinsically illegal but which are used as the immediate instrument of a crimealso does not infringe on a protected interest because the right to own property "is subject to reasonable statutory restrictions and the reasonable exercise of the police power." Art. I, § 4. However, because forfeiture of derivative contraband by the state is an exception to the basic right of an individual to own private property, the state necessarily must bear the burden of proving that the property in question qualifies as derivative contraband. As noted by the spokesman for the Declaration of Rights Committee at the 1973 Louisiana Constitutional Convention:
the purpose of this language [Article I, Section 4's allowance for "reasonable statutory restrictions and the reasonable exercise of police power"] is to limit ... the exercise of the police power to a standard of "reasonableness." Moreover, since the rule is protection of property rights and the exception is regulation of those rights, the burden of proof must shift from the owner to its regulator. In other words, it is not the duty of the property owner to demonstrate that a given regulatory scheme is wholly arbitrary; instead it is the responsibility of the state to show its reasonableness.

XII Constitutional Convention of 1973, Verbatim Transcripts, 6, 20-21; Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 20 (1975) (Emphasis added). See also Hargrave, Declaration of Rights, 35 La.L.Rev. 1, 12 (1974).
*349 Article I, Section 4 expressly mandates that "[p]ersonal effects, other than contraband, can never be taken." (Emphasis added). Once again, it should be the state's burden to prove the exception to the rulethat the personal effects in question were used as an immediate instrument of a crime and therefore are forfeitable. Any statutory provision which purports to relieve the state of that burden is not a "reasonable" statutory restriction or exercise of police power. La.R.S. 32:1550(A)(7)(c) is unconstitutional because it relieves the state of the burden of proving that seized currency is derivative contraband.

(IX) DISPOSITION
Having concluded that the presumption contained in § 1550(A)(7)(c) is unconstitutional, we must next consider whether, apart from the presumption, the state proved that the currency was forfeitable contraband. Unquestionably, it did not. The only evidence which the state offered with regard to the money was that it was found in the defendant's back pocket. Further, the amount of cash which the defendant had in his possession ($1,400) was not so inordinately high as to be considered unusual or suspect, particularly for a person engaged in a cross country trip.
In fact, the only evidence in the record regarding the source of the money came in the form of a joint stipulation that the defendant's father gave him $1,500 two days before defendant left New Orleans to go to California, for use on the trip. Thus the evidence which was offered at the hearing on the origin of the money indicated that the $1,400 was not derivative contraband.
We agree with the trial judge that the state did not prove "beyond a reasonable doubt" that the money was derivative contraband, but we take the matter a step further. The state did not prove that the money was derivative contraband under any standard of proof; certainly not beyond a reasonable doubt, also not by clear and convincing evidence, and not even by a preponderance of the evidence. We accordingly reverse the judgments of the courts below insofar as they allowed the forfeiture of the currency, and remand the case for a new trial on the issue of whether the seized currency is forfeitable contraband. Upon re-trial, the state will bear the burden of proving, apart from the presumption, that the money is derivative contraband.[10] As previously noted, we affirm the forfeiture of the vehicle, and thus all proceedings on remand should pertain only to the seized currency.
Our decision that La.R.S. 32:1550(A)(7)(c) is unconstitutional does not affect any other provisions of the forfeiture statute. § 1550(A)(7)(c) is severable from the statute because it is independent from the remainder thereof, "and not so interwined with it as to raise the presumption that the legislature would not have enacted the statute without this provision." State v. 1971 Green GMC Van, 354 So.2d at 487; Roy v. Edwards, 294 So.2d 507 (La.1974). Forfeiture of currency remains permissible, but the state must prove that the currency is derivative contraband.

DECREE
For the reasons assigned, we affirm those portions of the judgments of the courts below which allow forfeiture of Spooner's vehicle. We reverse those portions *350 of the trial and appellate court judgments which allow forfeiture of the money found in Spooner's possession at the time of his arrest, and remand for a new trial on the issue of whether the currency is derivative contraband.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
LEMMON, J., concurs.
COLE, J., concurs in the result and assigns reasons.
MARCUS, J., concurs for reasons assigned by COLE, J.
WATSON, J., concurs but notes that he agrees with COLE, J., that the standard of proof should be a preponderance of the evidence.
COLE, Justice, concurring in the result.
I concur in the majority's decision insofar as it holds the presumption established within the context of La.R.S. 32:1550(A)(7)(c) unconstitutional because it violates due process under the Louisiana Constitution. However, because I believe the issue is much closer than some of the language in the majority's opinion might suggest, and because I do not agree entirely with the majority's rationale, I assign additional reasons.
I also concur in the majority's decision to remand the case to the trial court in order to allow the state to prove, without benefit of the presumption, that the $1,400.00 in cash found on Norman Spooner is in fact derivative contraband. However, I cannot join in the majority's decision to sidestep the issue of whether the state must prove that fact beyond a reasonable doubt or whether it need only prove that fact by a preponderance of the evidence. Failure to address this issue is an abdication of our responsibilities not only to the parties who have raised and argued the issue, but also to the lower court which is now asked to decide the question in the face of conflicting signals in the majority's opinion, coupled with a holding of the third circuit panel that this is a civil case as regards the standard of proof and earlier statements to the contrary by this Court were dicta. State v. Spooner, 505 So.2d 230, 233, 237 (La.App. 3d Cir.1987).
The majority states, in footnote ten of its opinion:
The state must offer evidence which satisfies at least one of the recognizable proof standards (i.e., proof by a preponderance of the evidence; proof by clear and convincing evidence) before we can pass on the issue of whether proof which falls short of the reasonable doubt standard but which satisfies a lower proof standard will suffice in a forfeiture hearing.
Why the majority feels it cannot answer the question at this point is unclear. Apparently, the majority feels it cannot pass on the issue because it is "hypothetical" (see paragraph five of the majority opinion). Surely it is not a hypothetical question. This is an actual case in controversy which must be decided. The legal question of what standard of proof the state must meet is at issue and is essential in deciding this actual case.
Moreover, judicial economy would mandate that we answer the question now. The question is a pure question of law which a second trial court hearing will not help in answering. Rather, in all likelihood the failure to answer the question now will invite appeal of whatever decision the trial court makes, with the eventual return of this same case to this Court to answer the very question the majority refuses to answer today.
It is my firm belief the state need only prove by a preponderance of the evidence that the money sought to be forfeited is derivative contraband. I cannot accept the conclusion forfeiture proceedings are so criminal in nature that La.R.S. 32:1550 does not, as the court of appeal stated, "establish a civil remedial proceeding." Spooner, 505 So.2d at 237. The majority opinion, I believe, adopts the wrong approach insofar as it approaches the case in the context of criminal law and relies upon criminal precepts.

*351 I. WHAT IS THE CONSTITUTIONALLY MANDATED BURDEN OF PROOF IN A FORFEITURE PROCEEDING?
A. Spooner's Argument
Spooner argues the state was constitutionally required to establish beyond a reasonable doubt each ground for the forfeiture. Specifically, Spooner complains the state's proof with respect to the $1,400 rested entirely on the statute's "rebuttable presumption" that all monies seized incident to a valid arrest and in close proximity to contraband, paraphernalia or records pertaining thereto, was itself "contraband." La.R.S. 32:1500(A)(7)(c).
La.R.S. 32:1550[1] defines the procedure and legal proof necessary for the seizure and forfeiture of contraband, including conveyances or moveable property used to facilitate the transportation of controlled dangerous substances. The state sought forfeiture of Mr. Spooner's automobile and the $1,400.00 found in his pocket pursuant to the following language in the statute:
§ 1550. Forfeitures
A. The following are contraband and shall be subject to seizure and forfeiture, and all property rights in the following are forfeited:
* * * * * *
(3) All cash which is used, or intended for use, to facilitate the transportation, sale, receipt, possession, production, manufacture, compounding, dispensation, concealment, importing, or exporting of [controlled dangerous substances or equipment used in the manufacturing and processing, etc. of controlled dangerous substances].
* * * * * *
(5) All conveyances or moveable property, including aircraft, vehicles, or vessels, which are used, or intended for use, to transport or in any manner to facilitate the transportation, sale, receipt, possession, manufacture, compounding, dispensation, or concealment of [controlled dangerous substances or equipment used in the manufacturing and processing, etc. of controlled dangerous substances].
The statute also provides the state must prove the value of the contraband was in excess of five hundred dollars or that the contraband was intended for commercial sale. La.R.S. 32:1550(C)(3). Once this burden is satisfied, forfeiture of Spooner's automobile falls easily within La.R.S. 32:1550(A)(5) since Spooner was carrying controlled dangerous substances in the automobile. Proving the $1,400.00 falls under La.R.S. 32:1550(A)(3) was made easier for the state under La.R.S. 32:1550(A)(7)(c) which provides:
There shall be a rebuttable presumption that all moneys, coin, and currency seized incident to a valid arrest and found in close proximity to contraband controlled dangerous substances or contraband manufacturing or distributing paraphernalia or records of the illegal importation, manufacture, or distribution of controlled dangerous substances, are contraband as defined herein. The burden of proof shall be upon claimants of such property to rebut this presumption by clear and convincing evidence.
Spooner's arguments that the state must prove each ground for forfeiture beyond a reasonable doubt rely on In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Manuel, 426 So.2d 140 (La.1983), and State v. Searle, 339 So.2d 1194 (La.1976). In re Winship is cited for the proposition that due process requires the prosecution to prove each element of a crime beyond a reasonable doubt. Id., 397 U.S. at 364, 90 S.Ct. at 1072-73. Searle is cited for the proposition that the use of mandatory presumptions in criminal cases will be sustained only if the prosecution can demonstrate that the presumed fact flows, beyond a reasonable doubt, from the proven fact on which it is made to depend. 339 So.2d at 1205. Both are correct statements *352 of the law. See, State v. Lindsey, 491 So.2d 371, 374 (La.1986); State v. Jones, 481 So.2d 598 (La.1986); Francis v. Franklin, 471 U.S. 307, 315-18, 105 S.Ct. 1965, 1972-73, 85 L.Ed.2d 344 (1985); County Court of Ulster County v. Allen, 442 U.S. 140, 157-58, 99 S.Ct. 2213, 2224-26, 60 L.Ed.2d 777 (1979).
However correct and well-settled these principles are, they have applicability only in the context of criminal cases. Consequently, in order to give his arguments any vitality, Spooner must show that the forfeiture statute, found among the Motor Vehicle and Traffic Regulations in the Revised Statutes, is governable by criminal law principles and jurisprudence. To accomplish this and show the necessary connexity, Spooner relies on State v. Manuel, supra.
In Manuel, writs were granted to consider the correctness of a district court's ruling which upheld the constitutionality of La.R.S. 32:1550 in the face of the defendant's motion for the release of two cars seized in connection with his arrest on three counts of drug distribution. After a thorough analysis and full written treatment, this Court affirmed. Id. at 148 (Marcus and Watson, JJ., concurring). Manuel classified forfeitures as "quasi-criminal" and suggested the proceedings were valid only so long as the "taking of property ... [is] subject to the same preconditions required for a seizure of criminal evidence." Id. at 143, 146. Manuel also suggested that federal due process analysis might be insufficient because federal review, under the 5th and 14th Amendments, is in some respects "less exacting than Louisiana constitutional inspection...." Id. at 146. Accordingly, and pertinent here, Manuel read La.R.S. 32:1550 as requiring:
the district attorney to prove beyond a reasonable doubt in a hearing instituted by him that: (1) valid grounds exist for forfeiture of the property under the statute which do not conflict with the constitution; (2) the seizure was in conformity with the constitution and the law or was made upon reasonable grounds to believe that it so conformed; (3) the owner of the conveyance was knowingly and intentionally a consenting party or privy to a violation of the controlled dangerous substances statute; (4) the value of the contraband was in excess of five hundred dollars or the contraband was intended for commercial sale. Id. at 147.
Manuel was decided January 10, 1983, or some eight months before the amendment which added (A)(7) and its disputed presumption to La.R.S. 32:1550. (Acts 1983, No. 150, § 1, effective August 30, 1983). At issue is whether (A)(7)(c)'s presumption passes constitutional muster under Searle and progeny.
B. The Court of Appeal's Reasoning
The Third Circuit's "close reading" of Manuel led it to conclude that Spooner's reliance was misplaced. It conceded the opinion contained "language to the effect" the state must prove each ground for forfeiture beyond a reasonable doubt, but the appellate court considered Manuel of no precedential value because the case involved "a pre-trial proceeding," and "the precise issue of the burden of proof required of the State ... was not before [the Court]." As a result, the Third Circuit viewed Manuel's "statements" concerning the burden of proof as dicta, not "a firm adjudication" of the issue and, thus, not binding on lower courts. With respect to the nature of the proceedings, the Third Circuit had no quarrel with Manuel's assessment that forfeitures were "quasi-criminal in character." In the court's view, however, this was not inconsistent with the legislature's designation of forfeiture as "in rem proceedings" under La.R.S. 32:1551 and with the "whole body of federal statutory and jurisprudential law," which recognized forfeitures as "civil in rem remedial sanctions, quasi-criminal in nature, which do not require the wide range of constitutional protections required in criminal cases." Spooner, 505 So.2d at 233.
The Third Circuit then undertook an exploration of federal jurisprudence interpreting forfeitures under 21 U.S.C. § 881 to determine the precise nature of forfeiture *353 proceedings and the extent of constitutional protections due claimants. Finding this body of law "persuasive" the court construed La.R.S. 32:1550 as calling for a civil proceeding. It went on to dispose of the core of Spooner's contentions this way:
The legislature recognized the difficulty in proving the origin of monies seized in connection with narcotic arrests and in an attempt to diminish the profitability of the illegal drug trade and to help finance the state's effort to fight illicit drug trafficking established the § (A)(7)(c) presumption. That presumption is nothing more than an inference, deduced from facts in evidence, which continues to stand only in the absence of clear and convincing evidence to the contrary.
The foregoing leads us to the inescapable conclusion that La.R.S. 32:1550 et seq. establishes a civil remedial proceeding and the presumption created by § (A)(7)(c) is permissive and constitutional. We therefore find this issue without merit. Id. at 237.
C. Analysis
The issue of whether the Federal or the Louisiana Constitution requires that the state prove its case beyond a reasonable doubt in forfeiture proceedings is a question of great importance because of the immense impact which illegal drugs has on society. "It is common knowledge," as one judge in New York has noted, "that illegal narcotics activity is an insidious vice resulting in human degradation and suffering." Sochemaro v. Rossetti, 6 Misc.2d 23, 161 N.Y.S.2d 454, 458 (1957). The forfeiture provisions of the Uniform Controlled Substances Act were written for the express purpose of creating a weapon in the battle against the illegal drug trade. They permit confiscation of the property used to further illegal activities and thereby deprive drug traffickers of a means of committing subsequent illegal acts. See, e.g. State v. 1971 Green GMC Van, 354 So.2d 479, 487 (La.1977) (Summers, J., dissenting); In re Forfeiture of 1983 Wellcraft Scarab, 487 So.2d 306, 309 (Fla.App.1986); State v. S and S Meats, Inc., 92 Wis.2d 64, 284 N.W.2d 712, 715 (App.1979). One often cited reason for the enactment of the provisions is that drug traffic has such a disastrous effect upon society and is so great an evil as to justify the drastic remedy of forfeiture. "Vehicle Forfeitures Under South Dakota's Controlled Substances Statute: An Evaluation of the Law in Light of Constitutional Challenges," 21 S.D.L.Rev. 119, 138-9 (1976), citing, "Relief to Owner of Motor Vehicle Subject to State Forfeiture For Use in Violation of Narcotic Laws," 50 A.L.R.3d 172, § 2(a) (1973).
In light of the immense importance of the constitutional issue to our society's fight against the drug trade, I believe this Court should again carefully examine this issue and the authorities cited in Manuel. It will be seen that the federal jurisprudence and the great weight of authority in other states clearly indicate that the United States Constitution does not mandate proof beyond a reasonable doubt in cases such as this. It therefore will be necessary to consider whether provisions of the Louisiana Constitution provide greater protection against forfeiture than does the United States Constitution.

1. State v. Manuel

As the Court of Appeal noted, Manuel was a pre-trial proceeding. Therein, this Court concluded the state had shown probable cause to proceed with a forfeiture action against the vehicles. The defendant had filed a motion for release of the vehicles, the merit of which was before the court. However, noting the "quasi-criminal" nature of forfeiture, the Court did say at trial of the forfeiture proceedings proof beyond a reasonable doubt would be necessary. Manuel, 426 So.2d at 148. It is apparent a seemingly logical jump was made from the premise that the statute was "quasi-criminal" to the conclusion that all "criminal" constitutional protections apply.
First, I have no doubt Manuel was correct in saying a forfeiture proceeding is quasi-criminal in that it penalizes the claimant, and its penalty "can result in even greater punishment than the prosecution." *354 Id. at 143. Obviously, the loss of an automobile and a significant sum of cash can be a great penalty. Nevertheless, upon reflection I would find another statement made in the same paragraph not to be entirely correct. The Manuel court said that the object of a forfeiture proceeding, like a criminal proceeding, is to penalize for the commission of an offense. Id. This statement is only partially true. An object, no doubt, is to penalize. However, an entirely separate object of the forfeiture proceeding exists. The forfeiture of the res used to further the illegal drug trade does more than punish. As I noted above, it also serves to deter further drug trafficking by taking part of the trafficker's means of committing subsequent acts. It is this second purpose which makes the nature of forfeiture quasi-criminal rather than entirely criminal.
This Court tacitly recognized this fact in Manuel. "A controlled dangerous substances forfeiture statute ... is," the Court said, "a reasonable exercise of police power because it fosters the public interest in preventing continued illicit use of the property and in enforcing criminal sanction." Id. at 146. (emphasis added) This prevention of further drug traffic is an important exercise of the police power of the state and furthers the civil needs of the community. As noted in Schwegmann Bros. v. Louisiana Board of Alcoholic Beverages Control, 216 La. 148, 43 So.2d 248, 255 (1949), the police power allows:
such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Consequently, both persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, welfare, and prosperity of the people of the state; everything contrary to the public interest is the subject of the exercise of the power.
Two Louisiana cases[2] were cited in Manuel for the proposition that the object of a forfeiture proceeding is to penalize. Manuel, 426 So.2d at 143. They were State v. Billiot, 254 La. 988, 229 So.2d 72 (1969) and Cornman v. Conway, 178 La. 357, 151 So. 620 (1933). The facts of these two cases are entirely consistent with the premise that all penalizations are not entirely criminal in nature, but that some penalties might be considered an exercise of the civil police power. Cornman involved a statute allowing forfeiture of vehicles used to transport malt extract without the tax having been paid. The issue was whether a judicial hearing was needed to seize the property. The court held that it was. It cited E. Freund, The Police Power, §§ 525, 526 (1904), for the proposition that where an unlawful use of property may be punished by forefeiture "[s]uch forfeiture is not an exercise of the police power, but of the judicial power; i.e., the taking of the property does not directly subserve the public welfare, but is intended as punishment for an unlawful act." Cornman, 151 So. at 622. The court contrasted the forfeiture statute with a statute which allowed an impoundment fee for towing an illegally parked cara statute which the court did not hold to be punitive, but was found to have been enacted to abate dangers to the public.
Two things are interesting to note regarding Cornman. First, the court's example of a fee for towing could be construed as in part a penalty for the act of parking illegally. Admittedly, the penalty was probably not the primary purpose of the state. However, the existence of the penalty aspect did not require a criminal judicial proceeding. Second, the Cornman court views the forfeiture statute as entirely punitive in nature. Freund even suggests that it has no direct subservience of the public welfare. These observations were perhaps correct regarding the state's purpose in enforcing its malt tax requirements, but such suggestions would not be correct as regards the legislative desire to curb the drug trade via La.R.S. 32:1550.
Similarly, the Billiot case cannot lend support for the conclusion that the sole object of all forfeitures is to punish the *355 claimant. Billiot involved a criminal statute which made trawling for shrimp during the closed season a misdemeanor. The penalty provisions included (1) a jail sentence, (2) a fine, and (3) the forfeiture of the seines, trawls, tackle, etc. used in the violation. Manuel is correct to cite this case as an example of a forfeiture statute which is intended only as a penalty. This is not, however, the case with the forfeiture provisions in R.S. 32:1550, et seq., which specifically state that it is to be considered an in rem proceeding. La.R.S. 32:1551(A). Moreover, this statute is not a part of the criminal code, but is a provision in the Motor Vehicles section of the revised statutes.
Cornman and Billiot are the only Louisiana cases cited in Manuel for the proposition that the object of forfeiture is to penalize for a criminal offense. In State v. 1971 Green GMC Van, 354 So.2d 479 (La.1977), however, these same cases were cited (along with Finance Security Co. v. Conway, 176 La. 456, 146 So. 22 (1933); Perry v. Butler, 8 So.2d 95 (La.App.2d Cir.1942); and Armbruster v. Behan, 3 Orl.App. 184 (1906)) for the similar proposition that "a forfeiture proceeding, although technically a civil proceeding, is designed as a penalty for violation of a law." It is appropriate to examine these cases to see if they support the premise that the sole object of a forfeiture lays in its "design as a penalty."
Finance Security Co. involved the same malt tax statute as Cornman. A truck was seized for carrying untaxed malt, but the owner of the truck was in Mississippi and was not aware that the driver, who had possession of the truck only on consignment, was carrying untaxed malt. The court held the forfeiture statute was unconstitutional because it did not afford the owner notice and an opportunity to be heard. The court did not hold that the purpose of the statute was to penalize, but they did cite the same passage in Freund's The Police Power which was cited in Cornman.
Perry merely stands for the proposition that, "in all penal or summary proceedings for the divestiture of title to property, the law must not only be construed strictly but its substantial requirements must be closely observed as well." Perry, 8 So.2d at 97. It is a basic rule of statutory construction that "penal" statutes be strictly construed. This has never meant, however, that proof beyond a reasonable doubt is required.
Armbruster involved the taking of $825.00 by the State because the money was used in illegal gambling. The court stated: "In this statute, as in all other criminal statutes where the word occurs, forfeiture is synonymous with fine." Armbruster, 3 Orl.App. at 197. (emphasis added) But the court did not hold that all forfeitures are criminal in nature. Rather, the court distinguished between criminal forfeiture and civil forfeiture. For example, they cite Ex Parte Alexander, 39 Mo. App. 108, 109 (1890):
The meaning of the word "forfeit" is to be determined by the connection in which it is used. When used in civil proceedings and in connection with the enforcement of civil rights, it contemplates an ordinary civil judgment which need not even be penal in its character; but when used in a criminal law it denotes a punishment for a statutory crime, the meaning of the word is equivalent to fine.
The Armbruster court also cites United States v. 3 Tons of Coal, 6 Biss. 379 (E.D. Wis.1875), where Justice Dwyer discusses "in an exceedingly learned opinion" the difference between a forfeiture in rem under certain sections of the internal revenue laws, and a forfeiture as a punishment for a personal crime:
I think I speak with accuracy when I say that these proceedings (forfeiture in rem under the internal revenue law) ... stand independent of and wholly unaffected by any criminal proceeding in personam. The forfeiture is not in an apt and legal sense a punishment for crime, even though the crime be committed when the forfeiture is incurred. The true test, I think, lies here. When the judgment of forfeiture necessarily carries with it and as part of it a conviction and judgment against the person for the crime, the case is of criminal character. But where the *356 forfeiture does not necessarily involve personal conviction and judgment for the offense, and such conviction and judgment must be obtained, if at all, in another and independent proceeding, then the remedy, by way of forfeiture, is of a civil and not criminal nature.
Armbruster, 3 Orl.App. at 198. The Armbruster court also cited Green v. Briggs, 1 Curtis (U.S.) 317 (1852), where the court stated that a case where "[i]t is not possible to separate the proceedings ... against the property, from the proceedings against the person" must "be distinguished from a forfeiture resulting from particular circumstances attending property imposed sometimes with and sometimes without a conviction of the owner for crime." Armbruster, 3 Orl.App. at 197. Finally, the Armbruster court concluded:
In our own State many statutes imposing forfeitures have been the subject of discussion and decision by the Supreme Court, and the line has been clearly drawn between penal statutes wherein forfeitures are imposed, and criminal statutes, where forfeitures are intended as a punishment for crimes. Id. at 203.
In summary, the cases cited in Manuel and the cases cited in 1971 Green GMC Van for the same proposition do not fully support the idea that forfeitures (as "quasi-criminal" statutes in that they do penalize the claimant) are "criminal" in all aspects and should always be treated as "criminal." Rather, as will be seen when I discuss both the federal cases cited in Manuel and their progeny, and the cases treating forfeitures in other states, the use of the phrase "quasi-criminal" is particularly apt because it recognizes that forfeiture proceedings remain in many respects "civil" in nature.

2. Federal Jurisprudence
Manuel cites, in addition to Cornman and Billiot, three federal cases regarding the quasi-criminal nature of forfeiture. Manuel, 426 So.2d at 143. They are: U.S. v. U.S. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); and Boyd v. U.S., 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885).
In Boyd a forfeiture provision was found in a statute making importation of certain property a crime. The Court held that it is "unreasonable" under the Fourth Amendment to seize property for forfeiture without a warrant or probable cause. They also held the Fifth Amendment protection against being a witness against oneself was implicated. U.S. Coin and Currency states:
[A]s Boyd v. U.S. ... makes clear, "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of the offenses committed by him, though they may be civil in form, are in their nature criminal" for Fifth Amendment purposes. From the relevant constitutional standpoint there is no difference between a man who "forfeits" $8,674 because he used the money in illegal gambling activities and a man who pays a "criminal fine" of $8,674 as a result of the same course of conduct. In both instances, money liability is predicated upon a finding of the owner's wrongful conduct; in both cases, the Fifth Amendment applies with equal force.

U.S. Coin and Currency, 401 U.S. at 718, 91 S.Ct. at 1043.

One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. at 701, 85 S.Ct. at 1251, stated a "forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."
These cases standing alone would surely lend great support to the defendant's position. However, as noted below, the U.S. Supreme Court has backed away from the statements in Boyd, U.S. Coin and Currency, and One 1958 Plymouth Sedan and has "firmly refused to broaden the criminal aspect of forfeiture so as to encompass a wider range of constitutional protections." Spooner, 505 So.2d at 233. In fact, the U.S. Supreme Court now clearly recognizes that for many purposes the "civil" nature of forfeiture dominates the "quasi-criminal" characteristics; thus, not every criminal *357 constitutional provision protects the forfeiture claimant.
For example, in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the issue involved the forfeiture of a boat which was carrying marijuana for distribution. The Court said:
Seizure permits Puerto Rico to assert in rem jurisdiction over the property to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illegal use of the property and in enforcing criminal sanction. 416 U.S. at 679, 94 S.Ct. at 2089-90. (emphasis added)
The Court also cites at page 684 Justice Story's statement in The Palmyra, 12 Wheat 1, 14-15, 6 L.Ed. 531 (1827) that "the practice has been, and so this Court understands the law to be, that the whole proceeding in rem stands independent of, and wholly unaffected by any criminal proceedings in personam. "The forfeiture statute serves the underlying laws against the illegal drug trade in two ways. First, it is an economic penalty rendering the illegal behavior unprofitable. Second, it prevents further illegal use of the property. Calero-Toledo, 416 U.S. at 686-7, 94 S.Ct. at 2093-4. The Court specifically noted U.S. Coin and Currency was not applicable because that case turned upon the "clear intention" of Congress to impose a penalty only upon those who were significantly involved in a criminal enterprise. Other statutes which are not intended only to punish criminal offenders do not get the same level of due process protection. Id. at 688, 95 S.Ct. at 2094.
Another case where the U.S. Supreme Court retreated from the analysis in Boyd is One Lot Emerald Cut Stones and One Ring v. U.S., 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). Illegally imported jewels were subjected to a forfeiture statute, but the defendant was acquitted of the criminal charges which also resulted from the importation. The defendant asserted that the forfeiture action was (1) barred by the criminal double jeopardy rules because it was an attempt by the state to enact punishment for a crime he was already acquitted of and (2) barred by collateral estoppel. The Court held, first, that:
the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments. Congress may impose both a criminal and a civil sanction to the same act or omission....
Id. at 235, 93 S.Ct. at 492. The Court felt the penalty had "remedial" purposes as well as punitive purposes. Id. at 237, 93 S.Ct. at 493.
Regarding the defendant's collateral estoppel argument, the Court stated:
Moreover, the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel. The acquittal of the criminal charges may have only represented "an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938). As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings.
Id. at 235, 93 S.Ct. at 492. The Court added:
Forfeiture of goods [is] ... enforcible by civil proceedings.... In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions. Helvering v. Mitchell, 303 U.S. at 400, 58 S.Ct. at 633. The question of whether a given sanction is civil or criminal is one of statutory construction.
Id. at 237, 93 S.Ct. at 493.
Calero-Toledo and Emerald Cut Stones and One Ring demonstrate the U.S. Supreme Court has refused to consider forfeitures as "criminal" for all constitutional purposes. Rather, Boyd, U.S. Coin and Currency, and One 1958 Plymouth Sedan represent the high water mark in extending *358 constitutional criminal protections to a forfeiture claimant.
The obvious difficulty presented by this jurisprudence is in deciding when the "quasi-criminal" nature of forfeiture actions mandates full "criminal" protection. Why does the U.S. Supreme Court forbid the state to make a warrantless search and seizure without probable cause (Fourth Amendment) and forbid the state to force a claimant to incriminate himself (Fifth Amendment), but not consider forfeiture "criminal" for double jeopardy purposes (also Fifth Amendment)?
The U.S. Supreme Court addressed this question squarely in U.S. v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). It said:
This Court has declined ... to give full scope to the reasoning and dicta in Boyd, noting on at least one occasion that "several of Boyd's express or implied declarations have not stood the test of time." Fisher v. U.S., 425 U.S. 391, 407 [96 S.Ct. 1569, 1579, 48 L.Ed.2d 39] (1976). In U.S. v. Regan, 232 U.S. 37 [34 S.Ct. 213, 58 L.Ed. 494] (1914), for example, we declined to apply Boyd's classification of penalties and forfeitures as criminal in a case where a defendant ... claimed he was entitled to have the Government prove its case beyond a reasonable doubt.... [Rather, Boyd ] did not modify or disturb but recognized the general rule that penalties may be recovered by civil actions, although such actions may be so far criminal in their nature that the defendant cannot be compelled to testify against himself in such actions in respect to any matters involving, or that may involve, his being guilty of a criminal offense.
Ward, 448 U.S. at 253, 100 S.Ct. at 2643-4. (emphasis added) The Court notes that a case can be "criminal enough" to trigger the protections of the Fifth or the Fourth amendments, but not "so far criminal in its nature" to trigger other criminal constitutional guarantees. Id. Further, it notes that the statute in Boyd listed forfeiture along with fine and imprisonment as one possible punishment for customs fraud, "a fact of some significance to the Boyd court," but in the case under consideration, the civil remedy and the criminal remedy were in separate statutes. Id. at 254, 100 S.Ct. at 2644.
This same rationale was developed in a U.S. Court of Appeal case which dealt with the issue now before this courtwhether proof beyond a reasonable doubt is required in a forfeiture proceeding. Bramble v. Richardson, 498 F.2d 968 (10th Cir. 1974). Bramble was caught transporting marijuana in his automobile, which was seized pursuant to 21 U.S.C. § 881, a federal forfeiture statute. The criminal charges against Bramble were dismissed; nevertheless, the government proceeded with its forfeiture action. Under 21 U.S.C. § 881 the burden of proof is on the defendant to prove that his vehicle is not forfeitable as contraband. All the government need show is that there is probable cause to believe that it is contraband.
Bramble challenged § 881 as unconstitutional, saying "that the forfeiture proceeding is in reality a criminal action and that to take his car without establishing beyond a reasonable doubt that a criminal violation has occurred violates the due process clause of the Fifth Amendment." Id. at 970.
The Court of Appeal, meeting Bramble's contentions, noted that Boyd did say forfeiture is quasi-criminal, but they also noted that One Lot Emerald Cut Stones and One Ring demonstrates the U.S. Supreme Court does not equate forfeiture with a criminal action for all constitutional purposes. The difficult question, they say, is under what circumstances will the quasi-criminal statute be considered criminal and when civil? Many situations, of course, exist outside forfeiture where civil fines are allowed. The Court of Appeal answered the question by focusing on whether the reason for the constitutional provision is being sidestepped. They stated:
In holding that the forfeiture proceeding was invalid the Court [in U.S. Coin and Currency] was essentially stating only that the civil penalty could not be imposed in a manner inconsistent with the *359 fifth amendment right against self-incrimination.
We therefore do not read U.S. Coin and Currency as signaling an end to the characterization of forfeiture actions as essentially civil proceedings....
What Coffey, Boyd, One Plymouth Sedan, and U.S. Coin and Currency do indicate is that the civil nature of forfeiture proceedings will not be permitted to provide an avenue through which the fundamental rights of protection against unreasonable searches and seizures and self-incrimination can be frustrated. A close reading of those cases simply does not justify the inference that they were intended to transform forfeiture proceedings into criminal actions for all procedural purposes. The absence of the reasonable doubt standard in the challenged forfeiture process does not result in a denial of due process.
Id. at 973.
The current federal test for determining when a penal statute (i.e., one that is quasi-criminal in nature because it penalizes the defendant) is to be considered as civil is outlined in U.S. v. Ward, supra; Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed.2d 917, (1938); and Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). First the Court considers whether the legislative branch, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another. Ward, 448 U.S. at 246-7, 100 S.Ct. at 2640. Second, where the legislative branch "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that only the clearest proof could suffice to establish the unconstitutionality of a statute on such ground." Id.
Regarding the controlled dangerous substances contraband forfeiture statute, it is evident the Louisiana Legislature considered the action to be a civil in rem action. La.R.S. 32:1551(A). Recognizing that forfeiture can be punitive, this Court has not been afforded proof of any unreasonableness of this penalty. Rather, as seen already, forfeiture aids in preventing those who deal in drugs from doing so again.
A more recent case by the U.S. Supreme Court is on point. In U.S. v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), a man was tried for illegally dealing in firearms but was acquitted. The government nevertheless instituted forfeiture proceedings under 18 U.S.C. § 924(d). The defendant claimed the forfeiture proceeding was criminal in nature, not civil. The Court said:
Finally, the forfeiture provision of § 924(d) furthers broad remedial aims. Section 924(d) was enacted as part of the Omnibus Crime Control and Safe Streets Act and later retained without alteration in the Gun Control Act of 1968. In enacting the 1968 gun control legislation, Congress "was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." Accordingly, Congress sought to "control the indiscriminate flow" of firearms.... Keeping potentially dangerous weapons out of the hands of unlicensed dealers is a goal plainly more remedial than punitive. Accordingly, we hold that Congress viewed § 924(d) forfeiture as a remedial civil sanction rather than as criminal punishment. (citations omitted)
Id. at 364, 104 S.Ct. at 1105-6. Thus, said the Court, the forfeiture is not an additional penalty so punitive under the second part of the Ward/Mitchell test as to override Congress's labeling it as a civil statute. The analogy between La.R.S. 32:1550 and 18 U.S.C. § 924(d) is obvious.

3. Jurisprudence From Other States Which Have Adopted Statutes Based On The Uniform Controlled Substances Act
It is apparent from the analysis above that the federal courts, including the U.S. Supreme Court, do not consider the U.S. Constitution to require proof beyond a reasonable *360 doubt in forfeiture cases. Rather, the language in Boyd, U.S. Coin and Currency, and One 1958 Plymouth Sedan which was relied on in Manuel has been limited and clarified in subsequent cases. It has been seen that the Louisiana jurisprudence cited in Manuel, along with Boyd, U.S. Coin and Currency, and One 1958 Plymouth Sedan, cannot be said to justify the full sweep of the conclusion reached in Manuel that all "criminal" constitutional protections apply. It is also appropriate to note that the overwhelming majority of states follow the federal lead.[3] The following statutory provisions and court decisions make express references to the burden of proof not being beyond a reasonable doubt in forfeiture actions.
Ala.Code § 20-2-93 (1975) ("The standard of proof required under this section is reasonable satisfaction"); State v. Blair, 435 So.2d 124 (Ala.Civ.App.1983); Tucker v. State, 445 So.2d 311 (Ala.Civ.App.1984); Pickron v. State, 443 So.2d 905 (Ala.1983); Woods v. State, 247 Ala. 155, 22 So.2d 901 (1945); Ariz.Rev.Stat.Ann. § 13-4311 (Supp.1986), ("Civil in rem action"); Ark. Stat.Ann. § 82-2629 (Supp.1985); Reding v. State, 277 Ark. 288, 641 S.W.2d 24 (1982) (preponderance); Reddin v. State, 15 Ark. App. 399, 695 S.W.2d 394 (1985) ("in rem civil proceeding, independent of the criminal charge and to be decided by a preponderance of the evidence"); Fla.Stat. §§ 932.701-704 (1985); In Re Forfeiture of 1974 Ford Pickup Truck, 462 So.2d 1127 (Fla.App.1984) ("Forfeiture is a civil remedy and the law does not require proof beyond a reasonable doubt to sustain the petitioner's case. Marks v. State, 416 So.2d 872 (Fla.App.1982); Tallahassee v. The Forfeiture of One Yellow 1979 Fiat, 414 So.2d 1100 (Fla.App.1982)"); In re Forfeiture of 1983 Wellcraft Scarab, 487 So. 2d 306 (Fla.App.1986) (State need only show probable cause that the res is subject to forfeiture); Morgan v. State, 172 Ga. App. 375, 323 S.E.2d 620 (1984) (preponderance); Idaho Code § 37-2744 (Supp.1987) ("Forfeiture proceedings shall be civil actions against the property subject to forfeiture and the standard of proof shall be preponderance of the evidence." § 37-2744(d)); Ill.Rev.Stat. ch. 56½, § 1505 (Supp.1987); People v. LeShoure, 97 Ill.Dec. 880, 143 Ill.App.3d 839, 493 N.E. 2d 687 (1986) (preponderance); Ind.Code § 16-6-8.5-5.1 (1983); Iowa Code §§ 809.11 (Supp.1987) ("Forfeiture is a civil proceeding. At the hearing the burden is on the state to prove by a preponderance ..."); Miss.Code Ann. § 41-29-153 (Supp.1986) (preponderance); Reed v. State, 460 So.2d 115 (Miss.1984) (preponderance); Ervin v. State, 434 So.2d 1324 (Miss.1938) (preponderance); N.H.Rev.Stat.Ann. § 318-B:17-b (Supp.1987) ("shall be deemed a civil suit in equity in which the state shall have the burden of proving all material facts by a preponderance of the evidence...."); S.D. Codified Laws Ann. §§ 34-20B-70 et seq. (1986) ("Forfeiture proceedings shall be civil actions against the property seized and the standard of proof shall be preponderance of the evidence."); Tex.Rev.Civ.Stat. Ann. art. 4476-15 § 5.07(b) (Vern.Supp. 1987) (preponderance); Valles v. State, 646 S.W.2d 636 (Tex.App.1983) (preponderance); Sochemaro v. Rossetti, 6 Misc.2d 23, 161 N.Y.S.2d 454 (1957) (forfeiture is civil); Lettner v. Plummer, 559 S.W.2d 785 (Tenn.1977) (preponderance); Commonwealth v. 1978 Toyota, 468 A.2d 1125 (Pa. Super.1983) (despite quasi-criminal nature, preponderance is enough); State v. S and S Meats, Inc., 92 Wis.2d 64, 284 N.W.2d 712 (App.1979) ("greater weight of the credible evidence").

4. The Louisiana Constitution
The foregoing makes it abundantly clear that courts in other jurisdictions, and particularly *361 the U.S. Supreme Court, do not find that forfeiture proceedings are mandated by due process to be proven beyond a reasonable doubt. Also, the cases cited in Manuel for the proposition that forfeiture is penal do not support the idea that forfeiture proceedings should be treated as criminal for all purposes. This being so, one must look to the Louisiana Constitution to see whether it mandates a higher burden of proof. This inquiry is particularly necessary in light of this Court's reference in Manuel to the "more detailed safeguards for property rights contained in our state charter." Manuel, 426 So.2d at 147.
Two provisions of the Louisiana Constitution are relevant to this discussion. La. Const. Art. I, § 2 reads: "No person shall be deprived of life, liberty, or property, except by due process of law." La. Const. Art. I, § 4 reads:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
a. Article One, Section Two
It is difficult to conclude Section Two of the Louisiana Declaration of Rights affords greater due process protection than does the due process clause in the Federal Constitution. The language of the two provisions is almost identical. The U.S. Fourteenth amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.
Not only is the language almost identical, but a co-author of the Louisiana Declaration of Rights believes that Section Two "continues the standard of `fundamental fairness' used to determine whether governmental action violates those `principles of justice which lie at the base of all of our civil and political institutions.'" Louis "Woody" Jenkins, "The Declaration of Rights," 21 Loyola L.Rev. 9, 16 (1975). This standard does not differ from the federal standard. As recited above, the federal and state constitutions both provide that no person shall be deprived of property without due process of law, but "balanced against this substantial due process right, however, is the police power of governing authorities to protect the health, safety, morals and general welfare of the people." Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 519-20 (La.1983). Moreover, in regard to the taking of property, the federal and state due process guarantees requires only that the legislature have a rational relationship to a legitimate state interest. Id. at 520; City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Williamson v. Lee Optical, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Harry's Hardware, Inc. v. Parsons, 410 So.2d 735 (La.1982). Clearly the State has a legitimate interest in curbing the illegal drug trade, and the means chosen by forfeiture rationally serves that end by preventing drug dealers from using their property to engage in further illegal acts.
b. Article One, Section Four
As regards Section Four of the Declaration of Rights it has been stated "[t]he *362 right to own and control private property is recognized and given far-reaching new protection in another entirely new Section entitled `Right to Property.' Certainly, no other state constitution places such extensive limitations on the power and authority of government to regulate or expropriate private property." Jenkins, supra, at 19. This statement is undoubtedly correct, and if a greater protection from forfeiture is to be found in our Constitution, then it must lie in Section Four rather than Section Two. The language of Section Four is, indeed, not entirely found in the Federal Constitution.
Despite the great reach of Section Four in the protection of property, it is apparent the reach does not extend to requiring proof beyond a reasonable doubt in forfeiture proceedings. The language and the history of this provision make this clear.
At the Constitutional Convention hearings Mr. Jenkins was asked by Mr. Henry to explain the section. XII Constitutional Convention of 1974, Verbatim Transcripts, p. 6 (Aug. 30, 1973). Mr. Jenkins began by saying that property rights are as important as liberty rights because in Socialist countries where the government owns the means of production, even though liberty is guaranteed, liberty is less possible. For example, free press is less free because government owns so much of the business enterprises which advertise. Id. at 6-7.
The first sentence of Section Four, explained Mr. Jenkins, "means simply this. It does not mean that a person has a right with regard to any given piece of property; to dispose of it, or own it, or enjoy it. But that he has a general right, that the right, say, to own property cannot be a right which is taken away from him." Id. at 7. Regarding the second sentence:
There are basically two ways in which government limits property rights. One, by the police power, that is the regulatory power of the state, the authority of the state to do virtually anything in furtherance of the common welfare in the nature of regulation of property, so long as property rights are not denied entirely. That is what we refer to here when we talk about the police power.
Id.
Mr. Jenkins further explained the first two sentences of Section Four as follows:
The first sentence of the Section spells out various attributes of the right to property. This right is then limited by the two exceptions listed in the second sentence. This has the effect of making respect for property rights the rule and "reasonable statutory restrictions and the reasonable exercise of the police power" the exception. Unlike present law, this does not mean that a statutory restriction or an exercise of the police power is constitutional merely because it does not amount to a "taking" of property. The first two sentences would have been meaningless if that had been the intent, because the remainder of the Section protects citizens when their property is actually taken. On the contrary, the purpose of this language is to limit the authority of the Legislature and to limit the exercise of the police power to a standard of "reasonableness". Moreover, since the rule is protection of property rights and the exception is regulation of those rights, the burden of proof must shift from the owner of property to its regulator. In other words, it is not the duty of the property owner to demonstrate that a given regulatory scheme is wholly arbitrary; instead, it is the responsibility of the state to show its reasonableness. This is not to say that any manner of regulatory activity is necessarily invalid. Price fixing, licensing laws, land-use laws, zoning, fire code, building restrictions and countless other measures are all constitutionally permissible, provided they meet the standard of reasonableness and do not violate other constitutional safeguards, such as due process and equal protection. Moreover, even restrictions which do meet the standard of reasonableness on their face must still be administered in a reasonable manner. Even without language such as that in the second sentence, a number of other states use the due process clause in their own constitutions to *363 scrutinize legislation with greater care than the federal courts and to invalidate laws with greater frequency. However, the new standard established in the second sentence of the Section provides an additional basis for the courts to inquire into the question of whether state action affecting property rights has a rational basis.

Id. at 20-21. (Emphasis added)
It is readily apparent that regulation of property need only be reasonablealthough the state must show it is reasonable rather than relying on a presumption of reasonableness as is done in Fourteenth Amendment cases. Further, the transcript statements by Mr. Jenkins show that the concern addressed by the section was that of Socialism or excessive regulation or ownership of property by the government. "Delegates also believed that both public and private entities authorized by law to expropriate have abused that power. Finally, delegates expressed the fear that there were few constitutional safeguards against the expropriation or nationalization and business concerns which has occurred in other countries." Id. at 19.
The last two paragraphs of Section Four deal "with expropriation in contrast to the first paragraph's concern with regulation." See, Hargrave, "The Declaration of Rights of the Louisiana Constitution of 1974," 35 L.L.R. 1, 13 (1974). It is in the subject matter of expropriation that the Louisiana Constitution gives "far-reaching" new protections. Protections regarding expropriations cannot be said to limit the government's reasonable regulation of contraband. It is true that Section Four provides that personal effects, other than contraband, shall never be taken [expropriated]. Forfeiture is not expropriation, however. Neither is the taking of contraband prohibited. Professor Hargrave correctly understood the last sentence of the second paragraph of Section Four as regards the forfeiture or taking of contraband when he noted:
The government's power to classify items as contraband and to take them without compensation is of course limited by the provision that the right to own property is subject to "reasonable" restrictions and that property cannot be taken without due process.
Id. at 20.
As we've already seen, the taking of contraband under La.R.S. 32:1550 is both reasonable and comports with due process. No right, therefore, to have proof beyond a reasonable doubt in forfeiture proceedings can be gleaned from La. Const. Art. I, § 4. Rather, the burden of proof in a forfeiture proceeding is the civil standard of preponderance of the evidence. Insofar as Manuel required proof beyond a reasonable doubt in forfeiture proceedings, I would expressly overrule that case.

II. IS § (A)(7)(c)'s PRESUMPTION AND PLACEMENT OF A CLEAR AND CONVINCING BURDEN OF PROOF ON A CLAIMANT TO REBUT THE PRESUMPTION CONSISTENT WITH DUE PROCESS PRINCIPLES?
Although I would hold that the state is not required to meet the reasonable doubt standard in a controlled dangerous substances contraband forfeiture proceeding, I agree with the majority that § (A)(7)(c), which creates a presumption, shifts the burden of proof, and places a greater burden of rebuttal on the property owner than the original burden on the state, offends basic notions of due process and conflicts with the provisions of the Louisiana Constitution. I do not, however, believe the issue can properly be stated, as does the majority, in terms of which party must bear the burden of proof. I agree it must be the state's duty to bear the burden. A presumption merely assists one party in meeting its burden by functioning as an inference of fact. See, generally, Note, "Presumptions In the Criminal Law of Louisiana," 52 Tul.L.Rev. 793 (1978). I would not suggest that any presumption will violate due process. If the burden of proof is not placed upon the defendant statutorily, and the "inference" is only a party of the total evidence used by the state to meet its *364 burden of proof, such a presumption may pass constitutional muster.
La.R.S. 32:1550(A)(7)(c) reads as follows:
There shall be a rebuttable presumption that all moneys, coin, and currency seized incident to a valid arrest and found in close proximity to contraband controlled dangerous substances or contraband manufacturing or distributing paraphernalia or records of the illegal importation, manufacture, or distribution of controlled dangerous substances, are contraband as defined herein. The burden of proof shall be upon claimants of such property to rebut this presumption by clear and convincing evidence.
This provision erects a presumption which is very difficult to overcome. It is pertinent to note that in other states which have adopted provisions similar to that of § (A)(7)(c) the burden placed upon the claimant to rebut the presumption is much less difficult, for in none of them must the claimant prove this case by "clear and convincing evidence." Cf. the statutes cited supra in part "I,C,3."
I begin analysis of the constitutionality of the procedure established by § (A)(7)(c) with a consideration of the factors listed in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under Eldridge, three separate factors must be weighed in determining the validity of a procedure which can deprive a person of property: (1) the governmental interest served by the challenged procedure; (2) the individual interest served by the challenged procedure; and (3) the risk of an erroneous deprivation and the probable value of additional safeguards. Eldridge, supra, at 335, 96 S.Ct. at 903.
It is evident that the governmental interests protected by the controlled dangerous substances contraband forfeiture statute are of critical dimensions and may rightly be protected by strong legal measures. At the same time, however, it is evident that the interest a claimant has in his property is also substantial. The force of that interest is underscored by a fact which we have already recognizedforfeiture can result in even greater deprivation to the claimant than a criminal prosecution because the sum of cash affected by § (A)(7)(c)'s presumption can in some cases be very substantial. Thus, a weighing of the first two Eldridge factors arguably does not tip the scales one way or the other.
It can be argued that the third factor, risk of error, tips the scale against constitutionality on the ground that the risk of error is too great because it is very difficult to overcome the presumption when the claimant must rebut it with clear and convincing evidence. The phrase "clear and convincing evidence" has been interpreted by this court to mean, generally,
that the fact of guilt must be proven to a greater degree than by a "mere preponderance of the evidence" but less than by "beyond a reasonable doubt".... This standard requires that the existence of the disputed fact be highly probable, that is, much more probable than its non-existence....

Louisiana Bar Association v. Edwins, 329 So.2d 437, 442 (La.1976). (emphasis in original).
Thus, in Spooner's case, for example, proving the $1,400 in cash he had on his person was not contraband as defined in the statute would indeed be difficult.
Nevertheless, it can also be argued, in favor of constitutionality, that the risk of error is not very great, especially in light of safeguards in the statute. After all, the state must first prove that the other contraband is worth over $500 or used in commercial transactions. La.R.S. 32:1550(C)(3). Also, the district attorney must show the claimant was "knowingly a consenting party or privy to a violation of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950." La.R.S. 32:1550(C)(2). These provisions diminish the likelihood that someone other than a commercial or volume dealer will have his cash taken. Another statutory safeguard to protect against the risk of error is found in § 1550(C)(4), which provides that if the claimant is acquitted of criminal charges or the charges are dismissed, then the state must additionally show a "compelling reason" to go ahead with forfeiture.
*365 In short, good arguments can be made on either side regarding the third Eldridge factor, risk of error; and it is evident that the balancing of all the Eldridge factors presents a close case. Also, I note, the United States Supreme Court has never ruled on the issue of the constitutionality of shifting to a claimant a clear and convincing burden as attempted by the statute in the present case. Thus, a decision based solely on the Eldridge balancing test would be very difficult.
The difficulty of the question, however, is eased in Louisiana. I agree that the extra protections of the Louisiana Constitution guaranteeing rights of ownership of private property tip the scale against the constitutionality of § (A)(7)(c). In particular, the language in Article I, Section 4 that "Personal effects, other than contraband, shall never be taken" mandates that this Court hold § (A)(7)(c) to be unconstitutional under the Louisiana Constitution. By stating that personal effects, other than contraband, shall never be taken, the Louisiana Constitution adds to the weight of the factors under the admittedly close Eldridge balancing test. Since cash is not "per se" contraband, but rather is a "personal effect" until the state shows it to be "derivative contraband," the risk of error in any procedure which classifies cash as contraband must be very small in order to comply with Article I, Section 4's mandate that personal effects, other than contraband, never be taken. The presumption, concommittant with the shifting of the burden to the claimant to rebut it with clear and convincing evidence, is unconstitutional under the Louisiana Constitution.

CONCLUSION
I agree with the majority that the State carried its burden in showing the defendant's automobile was contraband under La.R.S. 32:1550(A)(3). Accordingly, I agree with the majority's affirming the judgment of the court of appeal that Spooner's automobile is forfeited. I also agree that we should reverse as to the $1,400 because § (A)(7)(c) is unconstitutional. But since the section is severable from the remainder of the statute, it is appropriate to remand for a new forfeiture proceeding in which the state must prove, but without the aid of the presumption, all the essential elements of the forfeiture statute as to the cash.
I would hold, however, that the State is not constitutionally required to prove its case beyond a reasonable doubt in a proceeding under the controlled dangerous substances contraband statute, La.R.S. 32:1550, et seq. Federal due process does not require it, nor does the Louisiana Constitution. Although I recognize that forfeiture is in part a quasi-criminal penalty, I also recognize that valid, reasonable state interests exist which warrant regulation under the civil police power of the State. This being so, forfeiture proceedings cannot be considered "criminal" for all constitutional procedural purposes.
DENNIS, Justice, assigning additional reasons.
I join in the opinion of the majority holding that the statutory assignment of the burden of proof and the presumption violate the federal and state constitutions. I write separately to express my view that the state is required to prove its case beyond a reasonable doubt before it may be permitted to stigmatize a person as a criminal and take his property without compensation.

1.
The Louisiana Constitution contains three unique, sturdy bulwarks against the erroneous deprivation of any person's property or good name. Each of these safeguards demonstrates Louisiana's greater than ordinary concern for the protection of an individual against an erroneous or arbitrary deprivation of his rights or property. Therefore, when the state seeks in a single proceeding to brand a person as a criminal and take his property without compensation because of that stigma, all three of the safeguards come into play and demand that the state prove its case with the highest reasonable degree of certainty.
The demand for a higher degree of persuasion in criminal cases was expressed recurrently from ancient times and crystalized *366 into the formula "beyond a reasonable doubt" in the late 1700's. It is now accepted in Anglo-American jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all essential elements of guilt. McCormick on Evidence § 341 (3rd ed. 1984).
The consequences to the life, liberty, and good name of a person from an erroneous stigmatization with crime is usually more serious than the effects of an erroneous judgment in a civil case. Therefore, as stated by the Supreme Court in recognizing the inevitability of error even in formal judicial proceedings, "[w]here one party has at stake an interest of transcending valueas [for example] a criminal defendant his libertythis margin of error is reduced as to him by the process of placing on the other party the burden ... of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt." Speiser v. Randall, 357 U.S. 513, 525-526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). See also In re Winship, 397 U.S. 358, 369-372, 90 S.Ct. 1068, 1075-1076, 25 L.Ed.2d 368 (1970) (Harlan, J. concurring).
The Louisiana Constitution clearly recognizes that a person has at stake an interest of transcending value in preventing an erroneous stigmatization of himself as a criminal and the uncompensated taking of his property predicated upon an erroneously imposed stigma. When read as parts of a whole, the constitution's declarations of every person's right to property, presumption of innocence, and judicial review of forfeitures require that the margin of error in such criminally stained forfeitures be reduced by the reasonable doubt measure of persuasion.
Article I, § 4, the declaration of the right to property, is a unique constitutional provision which, among other things, reduces the risk of an erroneous or unreasonable taking of property without compensation by placing the burden on the state to prove that the deprivation is a reasonable exercise of police or regulatory power. The safeguard, which recognizes and gives private property far reaching protection, provides:
Every person has the right to acquire, own, control, use, enjoy, protect and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose, and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.

This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
(Emphasis added)
No other state constitution places such extensive limitations on state government in the forfeiture, taking or regulation of private property. State v. 1971 GMC Green Van, 354 So.2d 479, 486 (La.1977).
The first sentence of section 4 establishes the right to property with all its various attributes and makes respect for property rights by the state the general rule. As an exception to the general rule, the second sentence recognizes "reasonable statutory restrictions and the reasonable exercise of police power". "[T]he purpose of this language is to limit the exercise of the police power to a standard of `reasonableness'. Moreover, since the rule is protection of property rights and the exception is regulation *367 of those rights, the burden of proof must shift from the owner to its regulator. In other words, it is not the duty of the property owner to demonstrate that a given regulatory scheme is wholly arbitrary; instead it is the responsibility of the state to show its reasonableness." XII Constitutional Convention of 1973, Verbatim Transcripts, p. 6, 20-21; L. Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 20 (1975).[1]
Section 4 also provides that "[p]ersonal effects, other than contraband, can never be taken." This new provision was not contained in the previous constitution. It acts as a safeguard against oppressive seizure or forfeiture of personal effects under the guise of curbing illegal or prohibited traffic. Thus, the constitution absolutely prohibits the seizure of "personal effects" unless they are contraband. The government's power to classify items as contraband and to take them without compensation, of course, may be exercised only in accord with the standard of reasonableness required by the second sentence of Art. 1, § 4 of the Louisiana Constitution. Hargrave, Declaration of Rights, 35 La.L.Rev. 1, 20 (1974). Consequently, when the state seeks to forfeit private property as contraband it has a dual burden of proof: first, it must show that the classification of a certain type of property as contraband is reasonable; and, second, the state must prove that the particular property that it seeks to seize or forfeit falls within that classification.
The far-reaching new protection of Article I, § 4 clearly extends to the area of forfeitures as well as expropriations. The plain words of the section erect a safeguard against unreasonable government action interferring with private property, whether by use of police power, regulation or expropriation. As Delegate Jenkins made clear in presenting the declaration of right to property section to the convention, the purpose of the first paragraph is to provide broader protection to all private property owners by limiting the authority of the legislature in the exercise of all aspects of its police power and not just to control the exercise of its expropriation power. Proceedings, Aug. 30 at 7. One aspect of the state's police power is its ability to seize and forfeit private property reasonably classified as constituting contraband. Article I, § 4 gives new and explicit protection to owners of private property against unreasonable seizures and forfeitures. Personal effects cannot be taken unless they have been defined as contraband under reasonable statutory restrictions and the reasonable exercise of the police power as required by the guiding principle of the first paragraph of Article I, § 4. Hargrave, supra at 19-20. The commonly accepted meaning of "personal effects" and "contraband" were intended by the delegates and the people in adopting the Constitution. Hargrave, supra at 20. Neither contraband nor personal effects are likely to be expropriated for public purposes and with just compensation. Therefore, it is obvious that these provisions do not refer to eminent domain proceedings. Instead, they clearly constitute safeguards against erroneous or unreasonable police and regulatory interference with private property.
Article I, § 16 provides a new and explicit safeguard against the erroneous or unjust stigmatization of a person as a criminal by creating the individual right to a presumption of innocence. By providing that a person accused of a crime is "presumed innocent until proven guilty" the declaration takes the extraordinary step of recognizing each individual's personal right to be presumed innocent independently of the state's burden of proving guilt. See Hargrave, Declaration of Rights, 35 La.L. Rev. 1, 52 (1974); State v. Hagan, 49 La. Ann. 1625, 22 So. 832 (1897). The right to the presumption of innocence demonstrates a greater than ordinary concern for a citizen's *368 right to life, liberty, property and reputation; it affords broader protection than the state's burden of proof requirement.
Article I, § 19 provides novel protection for each person from an erroneous or unjust "forfeiture of rights or property" by providing that no such deprivation shall take place "without the right of judicial review based upon a complete record of all evidence upon which the judgment is based...." The safeguard arose out of the delegates' fears that an erroneous or arbitrary forfeiture or deprivation in an unrecorded judicial proceeding could not be rectified by a higher court for lack of a complete record of the evidence. Hargrave, supra, at 60. The provision applies to any instance of forfeiture or uncompensated taking regardless of whether the proceeding is labeled "criminal", "civil" or somewhere inbetween. See L. Jenkins, supra, at p. 37.
In sum, the Louisiana Constitution's new and explicit declarations of rights to property, presumption of innocence, and judicial review of forfeitures represent deliberate measures designed to require a high degree of certainty in any case before a citizen is deprived of his property or rights. Therefore, when one person is threatened with both loss of his property and his good name in the same proceeding, he unquestionably has at stake an interest of transcending value under our constitutional scheme. For this reason, the margin of inevitable error in every such judicial proceeding must be reduced by the process of placing on the state the burden of proving the criminal basis for the forfeiture beyond a reasonable doubt. Obviously, the preponderance of the evidence standard would be inappropriate in such a case, because it is the measure we reserve for ordinary civil suits; for example, an action between two private parties for money damages, in which we view as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. See In re Winship, supra (Harlan, J. concurring). Clearly, in our constitutional context it is far worse to brand an innocent man as a criminal and take his property without compensation than to let a guilty man keep his property without stigma. Moreover, this has long been the consensus in Louisiana even before the adoption of the new constitutional provisions as evidenced by this court's cases traditionally viewing forfeitures with disfavor and as criminal and punitive sanctions.[2]

2.
The concurring opinion's lengthy discussion of federal jurisprudence calls for two observations. First, a federal court's interpretation of the federal constitution is not binding upon this court in the interpretation of the Louisiana constitution, even in instances in which the words of the two constitutions are the same, and much less so when the provisions are markedly different, as in the protections against the forfeiture of property. Second, the concurring opinion incorrectly interprets the United States Supreme Court opinions. If the Louisiana forfeiture statute at issue were a Congressional Act, it properly would be *369 classed as a criminal statute under the high court's decisions and require the government to prove its case beyond a reasonable doubt.
The Supreme Court has often stated that the question whether a particular statutorily-defined penalty or forfeiture is civil or criminal is a matter of statutory construction. U.S. v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); U.S. v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); One Lot Emerald Cut Stones and One Ring v. U.S., 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed.2d 917 (1938). The high court's inquiry in this regard traditionally proceeds on two levels.[3] First, it sets out to determine whether Congress, in establishing the penalizing or forfeiture mechanism, indicated either expressly or implicitly a preference for one label or the other. Id. Second, where Congress has indicated an intention to establish a civil penalty, the court inquires further whether the statutory scheme is so punitive either in purpose or effect as to negate that intention. U.S. v. Ward, supra; One Assortment of 89 Firearms, supra; Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Even when it concludes that the statute is not sufficiently criminal in nature to trigger other guarantees, the court sometimes inquires further to determine if the law is "quasi criminal" and therefore sufficient to implicate the specific constitutional safeguard claimed in the particular case. See Ward, supra; Boyd v. U.S., 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).
Using this federal approach to our Louisiana statute, for illustrative purposes only, it is quite clear that the Legislature intended to impose a criminal penalty upon persons in Spooner's position. Initially, the Legislature did not label the sanction authorized as a "civil penalty" as Congress has done in some of the statutes which the high court has classed as civil. See, e.g., U.S. v. Ward, supra. See also Clark, supra, 60 Minn.L.Rev. at 410. The Louisiana statute prescribes steps to be followed in effectuating a forfeiture of "contraband". In defining the grounds for a forfeiture the statute incorporates by reference the provisions of criminal, rather than civil, statutes and procedures. The statute does not authorize a summary administrative proceeding for forfeiture of items of smaller value as have some of the federal laws deemed to be civil in nature. See U.S. v. One Assortment of 89 Firearms, supra. Finally, the provisions which permit forfeiture, regardless of value, of cash, money and conveyances or movable property, including aircraft, vehicles and vessels further a goal plainly more punitive than remedial. Cf. U.S. v. One Assortment of 89 Firearms, supra. Accordingly, it is evident that even under the federal approach the Legislature would be deemed to have intended to allow imposition of forfeitures as a criminal sanction subject to the procedural protections and restrictions available in criminal cases.
*370 For the sake of argument, however, let us assume that the Legislature had an intention to establish a civil, remedial mechanism, rather than a criminal punitive one. Following the federal approach we would then turn to the second aspect of the high court's inquiry: whether the statutory scheme is so punitive either in purpose or effect as to negate the Legislature's intention to establish a civil mechanism. In making this determination the high court has traditionally referred to the seven factor test set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963):
Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishmentretribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose assigned are all relevant to the inquiry and may often point in differing directions. Id., at 168-169, 83 S.Ct. 554, at 567-568, 9 L.Ed.2d 644, 83 S.Ct. 554 (footnotes omitted).
Analysis of the Louisiana statute using the Mendoza-Martinez factors strongly supports a "criminal" designation for the forfeiture proceeding against Spooner. First, the seizure and forfeiture of a person's automobile and all of the cash he happens to have certainly is an "affirmative disability or restraint". Second, seizure without compensation is not traditionally a form of civil remedy, and does not serve any remedial purpose disassociated from punishment. U.S. v. Ward, supra, (Blackmun, J. concurring). Third, the sanction of forfeiture of Spooner's automobile, cash, and paraphenalia comes into play only on a finding of scienter. See La.R.S. 32:1550 A(1), A(2), A(3), A(5)(a). Fourth, there is no provision in the statute that money or property forfeited shall be deposited in a revolving fund used to defray the expense of any civil remedial purpose. Accordingly, the statute's operation promotes only the traditional aims of punishment retribution and deterrence. See U.S. v. Ward, supra, (Blackmun, J. concurring). Fifth, the behavior to which the forfeiture applies is already a crime. Each forfeiture authorized by the statute is dependent upon the defendant's commission of or culpable implication in a controlled dangerous substance crime. La.R.S. 32:1550 A(1), A(2), A(3), A(5)(a). Sixth, there does not appear to be an alternative non-punitive purpose to which the forfeiture of automobile and cash could rationally be connected, and if one could be imagined, the sanction would be excessive in relation to any conceivable alternative purpose. In sum, the factors set forth in Mendoza-Martinez militate overwhelmingly in favor of classifying the forfeiture proceeding as criminal and punitive.
Nevertheless, for the purpose of further academic examination of the statute, let us assume that the first two prongs of the inquiry had indicated that the statute was civil in nature. The Supreme Court has held that such a conclusion does not completely dispose of the case. The Court has recognized that even if the penalty imposed is not sufficiently criminal in nature to trigger all constitutional guarantees, it still may be "quasi-criminal," and therefore sufficient to invoke selected safeguards appropriate to the case. U.S. v. Ward, supra; Boyd v. U.S., supra.
In Boyd v. U.S., supra, the Court held that the Fifth Amendment's protection against compulsory self-incrimination was available to a defendant contesting the forfeiture of imported merchandise for fraudulently attempting to evade the lawful customs duties. The Court stated that proceedings instituted for the purpose of declaring the forfeiture of a person's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal. Characterizing suits for penalties and forfeitures incurred by the commission of offenses against the law as "quasi-criminal", the court stated that they are within the reason of criminal proceedings for all purposes of the Fourth Amendment and of the Fifth Amendment's protection against compulsory self-incrimination.
*371 In United States v. Ward, supra, the high court had under consideration a statute calling for the imposition of a sanction expressly labeled a "civil penalty" for the discharge of oil or a hazardous substance into navigable waters under the Federal Water Pollution Control Act. The Court concluded that the statute was not "quasi-criminal" under the Boyd rationale and that the defendant was therefore not entitled to Fifth Amendment protection. A crucial distinction, according the Court, was that Boyd dealt with forfeiture of property, a penalty that had absolutely no correlation to any damages sustained by society or to the cost of enforcing the law, whereas in Ward, the penalty, in part tied to the cost of clean-up operations, was much more analogous to civil damages. United States v. Ward, 448 U.S. 242 at 254, 100 S.Ct. 2636 at 2644, 65 L.Ed.2d 742.
Ineluctably, the present case falls within the quasi-criminal category entitling the defendant to the significant protections of a criminal proceeding. This case is not distinguishable from Boyd because the forfeiture here has no correlation to damages to society or the cost of enforcing the law. The forfeiture in this case promotes only the traditional aims of punishment, retribution and deterrence.
Consequently, using any of the prongs of the high court's statutory construction procedure, one must conclude that the forfeiture is a criminal sanction, and that the proceeding in which it may be imposed is criminal, requiring the state to prove its case beyond a reasonable doubt. Although the federal statutory construction procedure is not binding on this court, the result reached thereunder is the same as that required by our state constitution.

CONCLUSION
A citizen whom the state would subject to a criminally based forfeiture of property has at stake an interest of transcending value under our state constitution. Accordingly, the risk of an erroneous stigma and deprivation is reduced as to him by placing on the state the burden of proving its case beyond a reasonable doubt. This was the holding (without dissent) of this court in State v. Manuel, 426 So.2d 140 (1983) and is in accordance with the principle which was clearly adopted by State v. 1971 Green GMC Van, 354 So.2d 479 (1978). These decisions have been followed in this state for over a decade and no good reason has been advanced for disregarding these precedents. Indeed, the arguments in the present case have brought forth additional, stronger and clearer reasons for requiring the state to prove its case beyond a reasonable doubt in a criminally based forfeiture proceeding.
NOTES
[1] 505 So.2d 230 (La.App. 3d Cir.1987)
[2] 507 So.2d 221 (La. 1987)
[3] The defendant argues that because a forfeiture proceeding is quasi-criminal in nature, the beyond a reasonable doubt standard should apply. The state contends that since a forfeiture proceeding is not entirely criminal in nature and has certain civil characteristics, it should not be required to prove the grounds for forfeiture beyond a reasonable doubt.
[4] The provisions of the forfeiture statute which are pertinent to this case provide as follows:

1550. Forfeitures
A. The following are contraband and shall be subject to seizure and forfeiture, and all property rights in the following are forfeited:
(1) All controlled dangerous substances which have been produced, manufactured, distributed, dispensed, or acquired in violation of the provisions of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950.
(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in producing, manufacturing, dispensing, compounding processing, importing, or exporting any controlled dangerous substances in violation of the provisions of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950.
(3) All cash which is used, or intended for use, to facilitate the transportation, sale, receipt, possession, production, manufacture, compounding, dispensation, concealment, importing, or exporting of property described in Paragraphs (1) and (2) of this Subsection.
* * * * * *
(5) All conveyances or movable property, including aircraft, vehicles, or vessels, which are used, or intended for use, to transport or in any manner to facilitate the transportation, sale, receipt, possession, manufacture, compounding, dispensation, or concealment of property described in Paragraphs (1) and (2) hereof, except that:
(a) No conveyance or movable property used by any person as a common carrier in the transaction of business as a common carrier shall be seized or forfeited under the provisions of this Part, unless it appears that the owner or other person in charge of such conveyance was knowingly a consenting party or privy to a violation of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950.
* * * * * *
(7)(a) Anything of value furnished, intended to be furnished, or acquired in exchange for a controlled dangerous substance in violation of the provisions of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950, including but not limited to, all proceeds of property traceable to such an exchange and all moneys, negotiable instruments, property, and securities used, or intended to be used, to facilitate such violation or acquired from the proceeds of such violation.
(b) No property shall be forfeited hereunder to the extent of the interest of an owner or security interest holder by reason of any act or omission established by him to have been committed or omitted without his knowledge or consent.
(c) There shall be a rebuttable presumption that all moneys, coin, and currency seized incident to a valid arrest and found in close proximity to contraband controlled dangerous substances or contraband manufacturing or distributing paraphernalia or records of the illegal importation, manufacture, or distribution of controlled dangerous substances, are contraband as defined herein. The burden of proof shall be upon claimants of such property to rebut this presumption by clear and convincing evidence.
* * * * * *
C. Except as provided in Paragraph (4) of this Subsection, property seized under this Chapter shall be forfeited in a hearing instituted by the district attorney upon:
(1) A showing by the district attorney that the seizure was constitutional or that the seizure was made upon reasonable grounds to believe the seizure was constitutional; and
(2) A showing by the district attorney that the owner of the conveyance was knowingly and intentionally a consenting party or privy to a violation of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950.
(3) A showing by the district attorney that the value of the contraband was in excess of five hundred dollars or that the contraband was intended for commercial sale.
[5] The state was also required to demonstrate that the seizure of the alleged contraband was constitutional. We agree with the trial court's finding that the state demonstrated that there was probable cause for the initial detainment of Spooner's vehicle, that the search was undertaken pursuant to a valid written consent and that probable cause existed for the subsequent arrest, pat down search of Spooner and seizure of items found in his vehicle and on his person. We note that the defendant does not raise the issue of the constitutionality of the search or seizure on appeal.
[6] More will be said regarding the federal jurisprudence in our discussion below of whether R.S. 32:1550(A)(7)(c) withstands scrutiny under the due process clause of the United States Constitution.
[7] A review of the forfeiture provisions employed by the forty-eight states which have adopted statutes similar to § 505 of the Uniform Controlled Substances Act indicates that Louisiana's imposition of a clear and convincing burden against the claimant constitutes a virtual statutory anamoly. Only Kentucky has adopted a similar provision. Ky.Rev.Stat. § 218A.410(j) (Supp.1986). The remaining forty-six jurisdictions vary in their approach to the issue, but most place the burden on the government to prove the grounds for the forfeiture of any type of derivative contraband, either by proof beyond a reasonable doubt, see, e.g., Cal.Health & Safety Code § 11488.4(i)(1) (West Supp.1987); 1983 Volkswagen v. County of Washoe, 101 Nev. 222, 699 P.2d 108 (1985) (citing Manuel); Okla. Stat.Ann.tit. 63, § 2-506(G) (West Supp.1987) (as to forfeiture of vehicles); or by clear and convincing evidence, see, e.g., New York Civil Practice Law and Rules Law § 1311(b) (McKinney Supp.1987); Okla.Stat.Ann. tit. 63, § 2-503(B) (West Supp.1987) (as to forfeiture of money); or by a preponderance of the evidence, see, e.g., Ala.Code § 20-2-93 (1984); Idaho Code § 37-2744(d) (Supp.1987); Maine Rev.Stat.Ann. tit. 22 § 2387 (West 1980 & 1986 Supp.). Other states follow the federal procedure in which the burden of persuasion shifts upon an initial showing of probable cause. See, e.g., Ariz.Rev. Stat.Ann. § 13-4311(H) (West Supp.1986). Still other jurisdictions have adopted presumptions which impute contraband status to money seized in close proximity to illegal drugs, see, e.g., Ark.Stat.Ann. 82-2629 (Supp.1985); Ill.Ann. Stat. ch. 56½ § 1505 (Smith-Hurd Supp.1987), but these states have not gone so far as to require the claimant to rebut the presumption by clear and convincing evidence.
[8] Because we hold that the due process and private property protections embodied in the Louisiana Constitution forbid any approach which would relieve the state of the burden of proving the grounds which support forfeiture, we do not follow the federal approach, which essentially places the burden of proof on the claimant after a minimal showing by the government. We do note that several commentators have roundly criticized the federal statute on constitutional grounds for shifting the burden of persuasion upon an initial government showing of probable cause. See Note, Due Process Implications of Shifting the Burden of Proof in Forfeiture Proceedings Arising Out of Illegal Drug Transactions, 1984 Duke L.J. 822 (1984). See also, Note, RICO Post-Indictment Restraining Orders: The Due Process of Defendants, 60 N.Y.U.L.Rev. 1162, 1181-86 (1985) (discussing similar provision in Criminal RICO statute); Reed, Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes, 22 Am.Crim.Rev. 747, 756-60 (1984); Reed & Gill, RICO Forfeitures, Forfeitable "Interests," And Procedural Due Process, 62 N.C.L. Rev. 57, 87-91 (1983).
[9] At no time has the United States Supreme Court expressly upheld those provisions under federal forfeiture law which shift the burden of persuasion onto the claimant. See D. Smith, Prosecution and Defense of Forfeiture Cases, § 11.03(8) (1987). Certainly, the United States Supreme Court has never approved of the shifting of a clear and convincing burden to a claimant as attempted by the statute in the present case.
[10] Because the state, at the forfeiture hearing, failed to offer proof by even a preponderance of the evidence that the currency was derivative contraband, this opinion does not reach the question of whether the state must prove that fact beyond a reasonable doubt. The state must offer evidence which satisfies at least one of the recognizable proof standards (i.e., proof by a preponderance of the evidence; proof by clear and convincing evidence) before we can pass on the issue of whether proof which falls short of the reasonable doubt standard but which satisfies a lower proof standard will suffice in a forfeiture hearing. The author of this opinion subscribes to the position taken by Manuel, which is that the state must prove the grounds for forfeiture beyond a reasonable doubt. However, as noted at the outset of the opinion, the members of this Court are divided on the question of the precise burden of proof which should be imposed upon the state, and the facts of this case do not require the resolution of that issue at this time.
[1] This section is modeled on the Uniform Controlled Substances Act, § 505, 9 U.L.A. 191 (1979). The Uniform Act was designed "to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem." Unif.Controlled Substances Act, Commissioners' Prepatory Note, 9 U.L.A. 188 (1979).
[2] The federal cases cited will be discussed in more detail below.
[3] Of the forty-one states which have adopted statutes based on the Uniform Controlled Substances Act, we have found only two providing that proof beyond a reasonable doubt is required. 1983 Volkswagen v. County of Washoe, 101 Nev. 222, 699 P.2d 108 (1985). The Nevada court held that the state must prove its case beyond a reasonable doubt because of the quasi-criminal nature of forfeiture. They provide no justification for this holding except to cite One 1958 Plymouth Sedan and Manuel.

Also, Cal.Health and Safety Code § 11488.4(i)(1) (Supp.1987) provides in the statute that the state must prove its case beyond a reasonable doubt.
[1] Mr. Jenkins, a delegate to the 1973 Louisiana Constitutional Convention, was the Declaration of Rights Committee's spokesman in presenting this provision to the convention. The remarks to the Convention and in his law review article are identical. The concurring opinion attempts to rely on this passage but ignore's Mr. Jenkins' very pertinent explanation that the burden of proof is on the state to show that its exercise of police power is reasonable.
[2] In State v. 1971 Green GMC Van, 354 So.2d 479 (La.1977) this court reviewed that jurisprudence:

Louisiana law has traditionally looked with disfavor upon forfeitures. Puchner v. Employers' Liability Assur. Corp., 198 La. 921, 5 So.2d 288 (1942); Homestead Soc. v. Langermann, 156 La. 76, 100 So. 55 (1924). A forfeiture proceeding, although technically a civil proceeding, is designed as a penalty for violation of law. State v. Billiot, 254 La. 988, 229 So.2d 72 (1969); Cornman v. Conway, 178 La. 357, 151 So. 620 (1933); Finance Sec. Co. v. Conway, 176 La. 456, 146 So. 22 (1933); Perry v. Butler, 8 So.2d 95 (La.App.1942); Armbruster v. Behan, 3 Orl.App. 184 (La.App.1906); see United States v. U.S. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885). When a forfeiture provision is penal in nature, conviction of the offender on the criminal matters has routinely been held to be a prerequisite to confiscation. See Lowther v. United States, 480 F.2d 1031 (10th Cir.1973); United States v. $3,296.00 in Currency, 286 F.Supp. 543 (D.C. N.Y.1968); Shipman v. Du Pre, 222 S.C. 475, 73 S.E.2d 716 (1952); People v. Reulman, 62 Cal.2d 92, 41 Cal.Rptr. 290, 396 P.2d 706 (1964); State v. Benavidez, 356 S.W.2d 845 (Tex.Civ.App.1962).
[3] Professor Clarke describes in some detail the process which the court has adopted:

[I]f a given law served only the purposes of retribution and/or deterrence, that law would be punitive. As a practical matter, however, few laws can be found which serve only the purposes of retribution or deterrence. Perhaps physical torture or pillorying are examples. But even the death penalty serves to incapacitate dangerous criminal by removing them from society and thus, under Packer's scheme, `preventing' crime as opposed to `deterring' it. And incarceration serves not only to incapacitate, but additionally, in theory at least, to rehabilitate.
Consequently, it becomes essential as a practical matter to find some method by which courts can isolate a `dominant' purpose from among various purposes that a given law, or sanction, might be said to serve. I would suggest that there are essentially two ways of going about this. The first is a method that the Court seems to have adopted, namely, to employ legislative history to determine the purpose that was uppermost or dominant in the group psyche of the legislature at the time the statute was enacted. The second method consists of presuming from the effects of a law, subject to rebuttal by reference to other effects, that it is punitive if it demonstrates certain of the indicia of purpose, with its overtones of inquiry into legislative history to determine what individual legislators or officials actually had in mind.
Clark, Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis, 60 Minn.L.Rev. 379, 435-436 (1976).